# In the matter of probate of the will of Wilbur F. Storey.

*Filed at Ottawa March 22, 1887.*

1. WILLS—*probate of wills—appeals—parties—trial de novo, etc.* The statute gives the right of appeal from orders of the county or probate court allowing or disallowing the probate of any will, to the circuit court of the same county, by any person interested in such will, to be taken in the same time and manner as appeals from justices of the peace, except that the appeal bond and security may be approved by the clerk of the county court, and on the appeal the trial shall be *de novo*.

2. An order of the probate court of Cook county, in allowing or disallowing the probate of a will of a deceased person, is final and conclusive, unless, on appeal, in the time and in the manner provided by statute, it shall be reversed by the judgment of the circuit court. But that court can not try the case *de novo*, except when it is brought before it according to law.

3. All persons interested in the will of a deceased person have the statutory right to appeal from an order of the county or probate court refusing to admit such will to probate. Such persons may appeal jointly or separately. The giving and approval of the appeal bonds divest the jurisdiction of the county court, and invest the circuit court with the same, and such jurisdiction does not depend upon the manner in which the transcript of the record may be made up.

4. It matters not, so far as the practice is concerned, by whom a will is presented for probate. The proceeding is informal, without written pleadings, or notice to any one. The rights of the parties and the jurisdiction and practice of the court will not be affected by the character in which the person acts who first offers the will for probate.

5. A party, by appealing from an order of the probate court disallowing the probate of a will, makes himself a party to the litigation, and takes upon himself the burden of establishing the writing as a will. Persons not appealing will not need to be summoned, or otherwise notified of the re-trial in the circuit court, but they may, nevertheless, appear and take sides on the questions presented, either as co-proponents or contestants of the will; and they will have a right to introduce any proper evidence in the case.

6. Where each of two persons takes a separate appeal from an order of the probate court refusing to probate a writing as a will, they will be regarded as proponents of the will, and all others objecting, as contestants. In such case, if one of the appellants dismisses his appeal, he may still be heard in support of the will, but it will be error for the court to allow him thereafter to manage and control the case. The other person having appealed, will have the right to control the case, and may dismiss his appeal at any stage of the hearing, even against the wishes and over the objections of the other parties.

7. ASSIGNMENT OF ERROR—*by whom—on appeal from order refusing probate of will.* An heir of a deceased person who appears on the trial of an appeal taken by another from an order disallowing the probate of a will of the decedent, and contests the probate, can not be said to be a disinterested party, and may assign for error the overruling of appellant's motion for leave to dismiss his appeal.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Wilbur F. Storey, a resident of Cook county, died October 27, 1884, seized of real and personal estate of the value of several hundred thousand dollars. He left surviving, a widow, Eureka C. Storey, and Anson L. Storey, a brother, Mary E. Farrand, a sister, Mary E. Anderson, a niece, and Edward P. Chapin, a nephew, his only heirs-at-law. On November 5, 1884, Mrs. Storey petitioned the probate court of Cook county for letters testamentary, and produced a writing purporting to be the last will and testament of Wilbur F. Storey, bearing date February 1, 1881, signed by the testator, and witnessed by Austin L. Patterson, Alfred S. Trude and Frank C. Mc-Clenthen, and offered the same for probate. Mrs. Storey was, by the will, appointed executrix, and among other provisions it gave to Mrs. Storey the management and conduct of the business of publishing the "Chicago Times," a newspaper owned and published by the testator at the time of his death, until the same should be sold; and, subject to exceptions named, she was given the use or interest of all the testator's estate during life, and was authorized to convert all the estate, except a certain house and grounds, into good interest bearing securities; and on condition that the testator's estate should yield $12,000 or more per year, the executrix was directed to pay to the testator's brother and sister, Anson L. Storey and Mary E. Farrand, each $1000 per year, for life, but if the estate should yield no more than $10,000 per year, such annuities should not be paid; and that upon the death of

Eureka C. Storey, the remaining portion of the estate should descend to the testator's heirs-at-law.

On November 14, 1884, the subscribing witnesses appeared before the probate court, and testified as to the writing offered for probate, and as to the mental condition of the testator, and the same day, the probate court entered an order refusing probate of the alleged will, for the reason that at the time Wilbur F. Storey signed said instrument, he was not of sound mind and memory, and was not competent to make his last will and testament. From this final order Mrs. Storey then prayed an appeal to the circuit court, which was allowed, on her filing an appeal bond, with approved security, within twenty days, and which appeal she perfected by filing her approved bond in the probate court on December 2, 1884. On the last named day, Mary E. Farrand also prayed an appeal from the same final order of the probate court, to the circuit court, and which was allowed on her entering into bond, with approved security, within twenty days from November 14, 1884, and this appeal she, on the same day, perfected, by filing in the probate court her approved appeal bond. A transcript of the whole record and proceeding in the probate court, from the filing of Mrs. Storey's petition for letters, on November 5, 1884, to and including the appeal bonds of both Mrs. Storey and Mrs. Farrand, of December 2, 1884, was, on December 5, 1884, filed in the circuit court of Cook county, and appears to have been docketed as No. 50,828. Three days later, on December 8, 1884, another transcript of the same record, in all respects like the first, except that it did not contain the prayer for appeal, allowance of appeal, and appeal bond of Mrs. Farrand, and contained the original appeal bond instead of a copy, was, by Mrs. Storey, filed in the circuit court of Cook county, and docketed in that court as No. 50,851, where it remained upon the docket of that court as a pending appeal until December 18, 1884, when, upon motion of appellant Eureka C. Storey, her appeal was dismissed out of that court, at her costs.

On December 24, 1884, John P. Altgeld entered his appearance in the circuit court, as the attorney of Mrs. Farrand, in the matter of the estate of Wilbur F. Storey, appeal by Mary E. Farrand, pending in that court, and docketed as No. 50,828, and on January 6, 1885, Mrs. Storey, by her attorneys, filed her written motion in the cause, moving the court to take the cause out of its order on the docket, and set it down for early trial, and on January 10, 1885, the appearance of Anson L. Storey was entered in the same cause, by his attorney. The motion of Mrs. Storey, of January 6, 1885, was, on January 17, 1885, continued till January 26, 1885, on which last named day the court, after argument, took the motion under advisement. On February 2, 1885, the court allowed Mrs. Storey's motion, and set the cause down for trial on July 6, 1885. It will be sufficient, further, to state, that commencing with the appearance of Mrs. Storey in the appeal of Mrs. Farrand, when, through her counsel, she moved the court to advance the cause and set it down for early trial, there was contention as to whether this appeal should be conducted and controlled by Mrs. Farrand, on whose appeal it was said to be pending, or by Mrs. Storey, the executrix.

On behalf of Mrs. Farrand it was contended, that Mrs. Storey, having dismissed her appeal from the same final order of the probate court, out of the circuit court, had no longer any standing in that court as an appellant or proponent of the will, and that the only appeal pending in the circuit court being the appeal of Mrs. Farrand, the latter occupied the position, in the circuit court, of appellant and proponent of the will, and had the right to conduct her own appeal; while on the part of Mrs. Storey it was contended, that upon an appeal of this character the case was not *inter partes*, but a proceeding *in rem*,—the only question being will or no will,— and that on appeal, as in the probate court, the executrix was the legal proponent of the will, and, as such, was entitled to conduct the trial. The circuit court accepted and acted upon

this view of the law, and consequently recognized the right of Mrs. Storey to conduct the trial in that court, over the objection of Mrs. Farrand.

Various steps occurred in the progress of the cause, during the year 1885, not necessary to be recounted, but during the early part of 1886 the court was engaged in the trial of the cause. It should, however, be stated, that when the cause was ready for trial, counsel for Mrs. Farrand moved the court to strike the appearance of Mrs. Storey from the files, and that this motion was overruled by the court; that this was followed by the formal objection of Mrs. Farrand to Mrs. Storey proceeding with the evidence as the proponent of the will, and coupled with this objection was an offer by Mrs. Farrand to proceed with the conduct of the case, and to put in the evidence on the part of the appellant, as proponent of the will, and to call A. S. Trude as a witness. This objection and offer of Mrs. Farrand were overruled, upon the ground that Mrs. Storey, the executrix of the estate, was really the proponent of the will,—the record showing, that by her petition the will was presented in the probate court, and asked to be probated. To both these rulings exceptions were taken by Mrs. Farrand.

As the trial was drawing to a close, and the evidence had been heard, Mrs. Farrand made the following motion:

"STATE OF ILLINOIS, } ss.    In the Circuit Court.
  County of Cook. }

"In the matter of the estate of Wilbur F. Storey, deceased— Appeal of Mary E. Farrand:

"And now comes the appellant, Mary E. Farrand, by John P. Altgeld, her attorney, and dismisses her appeal from the probate court herein, and moves that an order be entered dismissing the said appeal at appellant's costs.

MARY E. FARRAND,
By John P. Altgeld, her attorney."

Endorsed: "Filed January 29, 1886.—Henry Best, Clerk. John P. Altgeld, Attorney."

But upon the objection of counsel for Mrs. Storey, the court overruled the motion, and this ruling of the court was excepted to by both Mrs. Farrand and Anson L. Storey. Afterwards, such further proceedings were had that the circuit court found that the will propounded for probate, and dated February 1, 1881, was the last will and testament of Wilbur F. Storey, deceased, and Anson L. Storey then entered his motion to set aside the finding, grant a new trial, and in arrest of judgment. But the court overruled the motions, and rendered judgment on the finding, that probate of the will be allowed, etc. Anson L. Storey excepted to the overruling of his motions and to the rendering of the judgment, prayed and perfected his appeal to the Appellate Court for the First District, where the judgment of the circuit court was affirmed.

Mr. W. C. GOUDY, for the appellant Anson L. Storey.

Mr. JOHN P. ALTGELD, for the appellee Mary E. Farrand, on cross-errors.

Messrs. DEXTER, HERRICK & ALLEN, for the appellee Eureka C. Storey.

Messrs. TRUMBULL, WASHBURNE & ROBBINS, also for the appellee Storey.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

The constitutional provisions in respect of matters of probate, so far as concern the questions arising in this case, are contained in sections 18, 19 and 20, of article 6. The general provisions are, that "county courts shall be courts of record, and shall have original jurisdiction of all matters of probate;" that "appeals * * * shall be allowed from final determinations of county courts, as may be provided by law;" and the special provision is, that in counties containing a given population, "the General Assembly may provide for the

establishment of a probate court;" that "said courts, when established, shall have original jurisdiction of all probate matters." The authority to establish probate courts was exercised in the passage of the act of April 27, 1877, in force July 1, 1877, (Laws 1877, p. 79,) under which the probate court of Cook county was brought into existence. The act provided, that "probate courts shall have original jurisdiction of all matters of probate;" that "the process, practice and pleadings in said court shall be the same as those now provided, or which may hereafter be provided, for the probate practice in the county courts of the State; and all laws now in force, or which may hereafter be enacted, concerning wills or the administration of estates, shall govern and be applicable to the practice in the probate courts of the State;" and that "appeals may be taken from the final orders, judgments and decrees of the probate courts to the circuit courts of their respective counties, in all matters except in proceedings on the application of executors, * * * for the sale of real estate, upon the appellant giving bond and security in such amount and upon such condition as the court shall approve, and upon such appeal the case shall be tried *de novo*."

Upon reference to the chapter on wills, it will be observed, section 11 provides that wills shall be probated in the county of the testator's residence, if he had a known place of residence. Section 12 provides, that immediately upon the death of the testator, the person having possession of the will shall deliver it to the probate court of the proper county. Section 2 of the Administrations act makes it "the duty of any person knowing that he is named or appointed as the executor of the last will and testament of any person deceased, within thirty days next after the decease of the testator, to cause such will to be proved and recorded in the proper county, or to present the will and declare his refusal to accept of the executorship;" and a failure on the part of the person having possession of the will, or by the executor, to present the will

as directed, renders the offender liable to the estate for civil damages. Section 14 of the chapter on wills provides, that "appeals may be taken from the orders of the county court allowing or disallowing any will to probate, to the circuit court of the same county, by any person interested in such will, in the same time and manner as appeals may be taken from justices of the peace, except that the appeal bond and security may be approved by the clerk of the county court; and the trials of such appeals shall be *de novo*." The time and manner of taking appeals from judgments rendered by justices of the peace, as provided in section 62 of the Justice of the Peace act, is, "the party praying for an appeal shall, within twenty days from the rendering of the judgment from which he desires to take an appeal, enter into bond, with security, to be approved and conditioned as hereinafter provided, in substance as follows:"—and then the form of the bond, and approval by the justice, are given. Section 63 of the last named act provides, that "one or more of several plaintiffs or defendants may appeal" from a judgment rendered by a justice of the peace, "without the consent of the others, and all further proceedings shall thereupon be stayed, the same as if all had united in such appeal;" and section 64 of the same act makes it the duty of the justice, when an appeal has been perfected before him, within twenty days after the approval of the bond, to file the bond "in the office of the clerk of the appellate court, together with all the papers and a transcript of his docket in the case." And when an appeal is perfected from the order and judgment of a county court refusing probate of a will, to the circuit court, section 13 of the chapter on wills provides, that "it shall be lawful for the party seeking probate of such will, to support the same, on hearing in such circut court, by any evidence competent to establish a will in chancery."

It is manifest from the foregoing, that the probate court of Cook county is vested with original exclusive jurisdiction

of the probate of wills of residents of that county, and that its orders and judgments in allowing or disallowing any will to probate, must be final and conclusive, unless, on appeal, in the time and manner pointed out by the statute, they shall be reversed by the judgment of the circuit court; and although it is also manifest that the trial in the circuit court, on the appeal, is to be a trial *de novo*, the power of the circuit court to entertain the appeal, and to re-try the case, is not inherent in the latter court. As was said in *Schooner "Constitution"* v. *Woodworth*, 1 Scam. 511: "Appeals for the removal of causes from an inferior to a superior court, for the purpose of obtaining trials *de novo*, are unknown to the common law, and can only be prosecuted where they are expressly given by statute." See, also, *Edwards* v. *Vandermack*, 13 Ill. 633; *Horton* v. *Critchfield*, 18 id. 133; *Kemper* v. *Town of Waverly*, 81 id. 278. "The principle is too well settled by repeated decisions of this and other courts, to require even a reference to authority to support it, that where a particular jurisdiction is conferred upon an inferior court or tribunal, its decision, when acting within the jurisdiction conferred, is final, unless provision is made by statute for an appeal from such decision. In no case has the circuit court inherent power to entertain appeals from inferior tribunals." *Ward* v. *The People*, 13 Ill. 635; *Skinner* v. *Lake View Avenue Co.* 57 id. 151.

Both Mary E. Farrand and Eureka C. Storey were persons interested in the alleged will of Wilbur F. Storey. They were both named in the will, and provision was therein made whereby they were to share in the testator's estate, and they both had the statutory right, either jointly or severally, to pray and perfect an appeal from the order of the probate court of November 14, 1884, denying probate of this will, to the circuit court of Cook county; and we are satisfied, that both in respect of the time and manner of taking such appeals, there was a substantial compliance with the statute. The only duty cast by the law upon the person desiring to

appeal, is, that within the time specified he shall pray, and perfect his appeal by presenting and securing the approval by the probate judge, or by the clerk of the probate court, of the requisite appeal bond, conformably with the order of the court allowing the appeal; and when he has done this, he has done all that the law requires of him to divest the probate court of, and invest the circuit court with, jurisdiction of the matter appealed. It is, doubtless, the duty of the clerk of the probate court to prepare the transcript of the record in his court, and to file the same in the circuit court; and in case of appeals by several from the same final order of the probate court, as was the case here, no reason is perceived why the clerk may not embody in a single transcript the several orders and appeal bonds, just as was done in the transcript filed December 5, 1884. The preparation and filing, however, of a separate transcript, if desired, for any reason, by one or more of the parties appealing, could in no way change or alter the legal effect produced by the giving of the appeal bonds. In either event, the one court would lose and the other court acquire jurisdiction.

It must, however, be said of this case, that while the legal effect of the giving of the separate appeal bonds, in conformity with the orders of the probate court allowing Mrs. Farrand and Mrs. Storey their several appeals, was, to take from the probate court that jurisdiction it primarily possessed, and to stay the execution of its judgment, and, for the time being, to hold in abeyance the question of the probate of this offered will, a change was wrought in the legal character of the proceedings thereafter to be taken, and in the relation of the parties. While the matter of the probate of this offered will remained in the probate court, it was in form a proceeding in the nature of a proceeding *in rem*. The law made it the imperative duty of any person having in his possession this writing purporting to be the last will and testament of Wilbur F. Storey, to straightway exhibit it before the probate court. The record

discloses, that when this writing had been completed by the signing of the attesting witnesses, the testator delivered it, together with an ante-nuptial contract between the testator and Eureka C. Pearson, (now Eureka C. Storey,) to one of those witnesses, Austin L. Patterson, for safe keeping, and, so far as we have been able to learn, this offered will remained in the possession of Patterson until Mr. Storey's death. If this is so, it was, under the law, Patterson's duty to have presented this paper to the probate court. Had he done so, instead of permitting Mrs. Storey to offer it for probate, precisely the same legal effect would have followed that did follow its presentation to the court by her, and the probate court would have done what it did,—call before it the attesting witnesses, and inquire of them as to the time and manner of the execution of the instrument, and whether, in the belief of the attesting witnesses, the person executing the same was, at the time of its execution, "of sound mind and memory."

No inconsiderable part of the argument of counsel for appellees, in this court, is taken up in pressing upon us the controlling significance of the fact that this instrument was offered or "propounded" in the probate court by Mrs. Storey; and yet, as we have seen, neither the power and jurisdiction of the probate court, nor the course of proceeding in that court, was in the slightest .degree affected by that fact. The same power and jurisdiction of the probate court in the premises would have been invoked, and the same course of proceeding would have ensued, if Mr. Patterson, a person having no interest in the will, had obeyed the plain behests of the law, and himself presented the writing for probate.

While the matter of the probate of this offered will remained in the probate court, it did not take on, nor could it, the form and semblance of a legal contest between hostile parties. The thing before the court, and about which it was to judicially inquire, was a paper, in form a testamentary disposition of property. If it was a will, certain legal consequences would

follow,—the estate of the testator would go to the beneficiaries therein named. If it was no will, certain other legal consequences would follow,—the estate of the decedent would not be affected thereby. And while it would seem that there must be, in every such case, two classes of persons (beneficiaries on the one hand, and heirs-at-law on the other,) whose interests might, though not necessarily, be hostile, nevertheless, the proceedings in the probate court, when a writing is offered for probate as a will, are, under our statute, informal, without written pleadings, without notice to any of the persons who may be interested, either as beneficiaries or heirs-at-law, and of a summary character, and in form, if not in substance, wholly dissimilar to a legal contest between hostile parties. If, then, neither the power and jurisdiction of the probate court, nor the form and course of proceeding in that court, nor the form and character of the judgment that may be rendered by the court in such case, can be affected by the person or the character of person who may first offer an alleged will for probate, as we have seen is the case, we are clearly of opinion, that Mrs. Storey, by reason of the fact that she offered this will for probate, and, as a consequence thereof, neither enlarged her own rights nor restricted the rights of any other person interested in the will, nor did she thereby become any more a party to the proceeding in the probate court than any and every other person interested in the will. She, and all the other persons interested in the will, were parties to the proceeding, in the sense that she and they alike would be bound by the orders and judgment of the probate court in the premises, until the same should be reversed on appeal, but in no other sense.

But while this is true, when Mrs. Farrand and Mrs. Storey perfected their separate appeals from the order of the probate court refusing probate of this offered will, they took on a new character,—they made themselves parties appellant in the circuit court, and occupied a position upon the record of hos-

tility, for the time being, to all other persons interested in the estate. By their appeal, they said, in legal effect, this *is* the will of Wilbur F. Storey, deceased; and all other persons interested in the will, by failing to appeal, said, in legal effect, it is *not* the will of Wilbur F. Storey, deceased,—and upon that issue, Mrs. Farrand and Mrs. Storey took upon themselves the burden of establishing the offered writing as a will; and although, after appeal, the persons not appealing need not be summoned or otherwise notified of the re-trial to be had in the circuit court, they would nevertheless be parties, and might, if they should choose, appear therein, and array themselves on either side of the contest,—as co-proponents, or contestants,—and, on the trial, it would be the duty of the circuit court to receive and consider any evidence offered by any interested party, competent to establish a will in chancery. *Heirs of Critz* v. *Pierce,* 106 Ill. 167.

While, therefore, we hold, that in a case of this character, under our statute and the recognized course of judicial proceeding in this State, the proceeding in the county court is in the nature of a proceeding *in rem,* we also hold, that, upon appeal, the character of the proceeding is changed, in so far as that, as between the persons appealing and those who may thereafter appear and unite with them, and all other interested persons, the proceeding is one in the nature of a proceeding *inter partes;* and that the persons appealing become, by virtue of their appeal, proponents of the will, and those afterwards appearing and uniting with them become co-proponents, while all other persons interested in the estate and opposing the probate of the will are to be regarded as contestants. When, however, Mrs. Storey voluntarily dismissed her appeal out of the circuit court, she ceased to occupy the position of proponent by virtue of appeal, and it became necessary for her, if she desired to be heard in that court in support of the will, to array herself along with Mrs. Farrand, and under the latter's appeal.

One error committed by the circuit court was, in allowing Mrs. Storey, after she had dismissed her own appeal, to assume, over the objection of Mrs. Farrand, entire control of the latter's appeal. Had Mrs. Storey retained her appeal in the circuit court, she might rightfully have claimed an equal voice in the conduct of the case and trial, with her co-appellant. It would be, manifestly, so unjust, and so at variance with the recognized course of procedure in this State, to take from an appellant, through whose affirmative action, and upon whose sole pecuniary responsibility, an appeal had been perfected, all control of such appeal in the appellate court, and give it to one who had voluntarily dismissed herself as an appellant in the same matter, that we can not give our sanction to the practice. Mrs. Storey's right to appear as co-proponent and offer evidence to sustain the will, is not questioned. It was entirely competent for her, or any other person interested in the estate, to call and introduce such witnesses as she might desire, to sustain the will, and to be heard by her counsel as such co-proponent, while the cause was pending in the circuit court.

We have shown, that under the constitution and laws of this State the probate of wills is confided, in the first instance, to the probate court; that that court is given original and exclusive jurisdiction, and that its orders and judgments are final and conclusive upon all parties interested in the allowance or disallowance of probate of a will, until reversed in the circuit court, on appeal; that the jurisdiction acquired by the circuit court to re-try the question of the probate of a will is not inherent in that court,—is not concurrent with the probate court,—but arises and exists solely by virtue of an appeal from the final orders and judgment of the probate court. And unless we were prepared to depart from a line of decisions in this State, the reasonableness and propriety of which have not till this present case been seriously questioned, but long acquiesced in by both bar and courts, we shall be compelled

17—120 ILL.

to hold, that a plaintiff in error and an appellant on appeal may, at any time before judgment, dismiss his writ of error or his appeal, and may do so over the objection of his adversary; and this we must do, notwithstanding the line of decisions in other States to which our attention has been·called, where, in the probate of a will, a contrary doctrine has been announced. When these cases come to be closely examined, in connection with the judicial system existing in those States, a marked distinction from our own is observable. This may be illustrated in the cases decided in the courts of North Carolina and Missouri, where the court of first instance has no jurisdiction to try a *contest* arising on the probate of a will. In every such case the cause must be transferred to a superior court, which alone has the power of trial and adjudication. And we can understand how, under such a system, no party in interest,·whether he be the person at whose instance the contest arose, and who may have been instrumental in bringing about the transfer to the superior court or not, should not be permitted to oust that court (in legal effect the court of first instance) of its jurisdiction, or arrest the course of its proceeding; for, although in form an appellant, he is not, by perfecting his appeal from the lower court, securing a new trial, or appealing from an order or judgment which otherwise would stand as a final judgment, binding and conclusive upon him, but his appeal is for a first trial.

Without carrying our examination of the cases further, we are content to rest our decision in this case upon what we conceive to be the recognized principle and practice, and the previous decisions of this court, in analogous cases. The statute has expressly placed appeals of this character upon the same general ground as appeals from justices of the peace to the circuit court, by providing that they shall be taken and perfected in the same time and manner as appeals from justices of the peace. *Bacon* v. *Lawrence*, 26 Ill. 53, was an appeal from a justice of the peace. Bacon recovered below,

but nevertheless appealed, and in the circuit court moved to dismiss his appeal. Lawrence entered a cross-motion for leave to join in the appeal, and in support, represented that he had a meritorious defence to the plaintiff's cause of action, and that he would himself have appealed if the plaintiff had not done so. In that case it was said: "The appellant had an undoubted right to dismiss his appeal. If the appellee was not satisfied with the judgment of the justice of the peace, he should himself have taken an appeal. By not doing so he acquiesced in that judgment, and must now be content with it. Taking an appeal by one party does not deprive the other of the right to do the same thing." In *Shaffer* v. *Currier*, 13 Ill. 667, also an appeal from a justice of the peace, wherein the plaintiff recovered below and appealed, this court held that the appellant "had an undoubted right to dismiss the suit." And in *Hancock County* v. *Marsh*, 2 Scam. 491, which was an appeal by Marsh from the county commissioners' court to the circuit court, wherein appellant moved to dismiss his appeal, it was said: "The appellant in appeal, and the plaintiff in a writ of error, may always dismiss their suit before a decision on the merits; and the effect of such dismissal is to leave the parties where they were before the appeal was taken or the writ of error brought." See, also, *Willis* v. *Spraggins*, 3 Gratt. 555; *Lake's Appeal*, 32 Conn. 331; *Lancaster's Appeal*, 47 id. 248.

But we can not conclude this branch of the case without reference to some of the arguments pressed upon our consideration by counsel for appellees. It is by them contended, with great earnestness, that Mrs. Farrand ought not to be permitted to withdraw her appeal from the circuit court after Mrs. Storey had appeared and produced evidence establishing the validity of the will, and thereby forever defeat the probate of this will and the intention of the testator. To this it must be answered: If such would be the legal consequences, it does not lie in the mouth of Mrs. Storey to complain. The

law gave her the undoubted right to appeal from the decision and judgment of the probate court denying probate of this will, in the probate of which she had obviously so large a pecuniary interest, and this right she understood and exercised; and the same law gave her the undoubted right to dismiss her appeal, and thereby, so far as she was concerned, leave in full force the judgment of the probate court, and this right she also understood and exercised ; and if it be true that by dismissing her appeal she has put it in the power of Mrs. Farrand to exercise the same right under the law of dismissing *her* appeal, although the consequences stated may follow, we are unable to perceive upon what principle this court, whose only province it is to declare the law, can be asked to declare one rule for Mrs. Storey and another for Mrs. Farrand, in the same cause and in respect of the same subject matter.

- It is further contended, that appellant Anson L. Storey could not assign for error the ruling of the circuit court denying Mrs. Farrand's motion to dismiss her appeal, nor the judgment of the circuit court admitting this will to probate, nor the judgment of the Appellate Court affirming the judgment of the circuit court, upon the ground that the motion denied was not his motion, and that the errors complained of worked him no injury. Conceding, as we do, the rule that a party will not be heard to complain of an error that works him no injury, it can have no application to appellant. Although not an appellant from the judgment of the probate court, he formally appeared in the circuit court, and became in fact, as he was in law, a party; and it seems to us, we need only say, that as an heir-at-law of Wilbur F. Storey it is conceded, and if it was not is abundantly shown by the evidence, that his interest in the estate will be largely in excess of the provision made for him by this will, which we deem quite sufficient to give him a standing in court as an appellant injuriously affected by the errors assigned.

For the reasons stated, the judgment of the Appellate Court must be reversed, and the cause remanded to the circuit court of Cook county, with directions to set aside its order probating said alleged will, and to sustain the motion of Mary E. Farrand, and dismiss her appeal at her costs, as of the day the motion was made by her.

*Judgment reversed.*

SCOTT, C. J., and CRAIG, J., dissenting.