**[No. 1527.]**
## MERCER v. MERCER.

1. PRACTICE—JUDGMENTS—DIVORCE AND ALIMONY.
A final decree of divorce was entered in the county court in favor of the defendant upon his cross-complaint without adjudicating the question of alimony prayed for by plaintiff. On appeal to the district court it was stipulated that the appeal should be dismissed with directions to the county court to open up the decree and hear the parties as to alimony; under this stipulation the county court heard evidence and entered judgment for plaintiff for alimony without entering any further or new decree for divorce. *Held* that the decree dissolving the bonds of matrimony and that adjudging alimony formed parts of but one decree which finally determined the rights of the parties.

2. DIVORCE AND ALIMONY—APPEALS AND WRITS OF ERROR—JURISDICTION.
Under the act, Session Laws, 1893, page 236, entitled "An act to provide

for a system of practice and procedure in relation to divorce and alimony, and to repeal certain acts in conflict therewith," the court of appeals has no jurisdiction to review judgments in actions for divorce either upon appeal or writ of error.

*Appeal from the County Court of Arapahoe County.*

DOMESTIC differences begot this suit for divorce between Lettie A. Mercer and her husband, John. Mrs. Mercer filed her complaint in April, 1896, wherein she set up statutory grounds for the severance of the bonds of matrimony, stated the financial situation of the defendant husband, and prayed for alimony both temporary and permanent. The husband answered denying the alleged grounds, and by way of cross-complaint set up a cause of action for divorce. After the replication was filed and the case was at issue, it came to trial in the county court before a jury. On the evidence the jury found against the wife and in favor of the husband. Thereafter a general decree of divorce was rendered. It was not entered until after the expiration of the time for filing a motion for a new trial, was then prepared by the defendant's attorneys, submitted to the court and signed. The original decree contained no provision respecting alimony. The proper motion to obtain temporary alimony had been filed, but under arrangements between counsel it was continued from time to time and not heard. There are some differences between counsel about the failure to have the motion heard and respecting the entry of the decree without notice. So far as we can see from the record these were honest and fair differences as the result of a misunderstanding, and the attorneys of neither party seem to have intended to take undue advantage of the other. It is unnecessary to set up the facts about this matter, or otherwise speak of the disagreement. After the entry of the decree an appeal was taken to the district court where under the statute the plaintiff was entitled to a trial *de novo*. After the cause reached the district court and before a hearing, apparently to avoid the trouble and expense

incident to another contest, the parties stipulated that the appeal should be dismissed by the following agreement:

" That the above-named plaintiff shall dismiss her appeal, and that thereupon the cause shall be remanded to the county court of Arapahoe county, and that the same shall be re-docketed in said court. That upon being so redocketed the final decree from which said appeal was taken shall be so far opened up as to permit the said county court to make such proper order and decree, for the payment of costs, counsel fees and permanent alimony if any, as it shall deem to be proper and just, and if necessary enter the same *nunc pro tunc*, each party hereto reserving the right of appeal there-from." Under that stipulation the case went back to the county court, the case was reopened and evidence offered by both parties respecting the property owned by the husband, the mode of its acquirement, the contribution claimed to have been made by the labors and efforts of the wife, and the question of alimony was finally submitted to the court. The court then adjudged the wife entitled to alimony, which would cover both the temporary and the permanent provision, in the sum of $350 and that she should have $150 for counsel's fees in the case. The record does not show, and we presume it to be otherwise, that the court thereupon entered a new decree covering not only provisions severing the bonds of matrimony contained in the first, and his findings on the question of alimony. Practically there appear to have been what under other circumstances would be called two decrees, though substantially it amounted to but one decree of the court which severed the matrimonial relation and provided for alimony. Under this decree the husband had judgment for divorce and the provision for alimony was adjudged and determined. From this decree the husband appealed to this court, com-plaining of course only of that part of it which adjudged ali-mony in favor of the wife. On the hearing the case was dis-cussed by counsel on its merits and respecting the legality or propriety of the decree, but the court *sua sponte* raised the question of its jurisdiction to determine the appeal under the

statute.    Exhaustive briefs were submitted by both counsel and the question remains for determination.

Messrs. STUART & MURRAY, for appellant.

Mr. D. V. BURNS, for appellee.

BISSELL, P. J.

While the merits of the controversy and the rightfulness of the judgment are questioned by both parties, by the appellee as to the sufficiency of the evidence to support the judgment and the right of the husband to a decree of divorce, and by the appellant on the hypothesis that the wife who had been found guilty and against whom a decree had been entered is entitled to no provision out of the husband's estate, we do not intend to determine either of those matters.    The only question which we shall determine is the naked one of jurisdiction.    This is the only course which we can pursue consistently with our conclusion that this court has no right to review judgments of this description.    This is the first case wherein this question has been presented to the court and argued.    In all the controversies between husbands and wives which have heretofore been submitted to us, neither side has questioned our right to review the judgments, nor until a recent period was the statute brought to the attention of the court.    In the cases which we have heretofore decided (*Hanscom v. Hanscom*, 6 Colo. App. 97; *Whelen v. Whelen*, 8 Colo. App. 196; *Dye v. Dye*, 9 Colo. App. 320) it is true, except in the *Whelen* case, that the action was not one for divorce.    Both the other cases were suits brought for separate maintenance, an action which has always been maintainable since the case of *Daniels v. Daniels*, 9 Colo. 133.    *In limine* we may suggest we do not concur with counsel respecting our appellate jurisdiction in cases of that description. As we view the act creating this court wherein its jurisdiction is defined and conferred, and the passage of the statute

for divorce which is under consideration and found in the Session Laws of 1893, chapter 80, page 236, there can be no question respecting our right to review judgments entered in cases begun solely to procure judgment for alimony by way of separate maintenance. We have jurisdiction to review all cases and final jurisdiction to determine them within certain well defined and well understood limits. The act under consideration, the divorce act of 1893, relates solely to suits technically known as divorce suits. Actions for separate maintenance are in no sense actions for divorce. Judgments rendered thereon may be appealed to this court or brought here by writ of error and the legality and sufficiency of the judgments may be determined under the general appellate powers conferred by the act creating the court. There is no inconsistency between that position and the one which we take with reference to the construction of the divorce act of 1893. We are quite ready to admit that it might appear otherwise from the opinion in the *Whelen* case. This opinion recites it is an action for divorce followed by a judgment against the husband for alimony. It may be true, though this question we do not here directly decide, in a suit of that description, being one for divorce, even though the final decree may be preceded by a judgment for alimony, the matter is not reviewable by this court. Whether this be or be not true, we do not here directly determine because the question is not presented and the present case is not one of that description. Whether in a suit for divorce there could be an independent judgment for alimony which might be reviewed by appeal or writ of error prior to the final determination of the suit, if therein a severance of the bonds of matrimony be sought, and the alimony is but an incident to the ultimate relief, we do not determine. It may be that this would under some circumstances be true. In any event we find nothing of this sort by an inspection of the record in the *Whelen* case though the matter was not called to our attention. There was no judgment of divorce when the appeal was brought here and prosecuted; it was simply a judgment for so much

VOL. XIII—16

money.   On its face it was regular and the appeal was from a money judgment, and there was nothing to show that this was not the final and ultimate determination of the suit. There was no appearance by the appellee and under this record we proceeded, as manifestly we had a right, to consider the rightfulness of the judgment and affirmed it.   This fully explains the situation of the *Whelen* case, and if we had said nothing about the fact that the prayer of the suit was for a divorce as well as for alimony, the opinion would contain nothing which could be challenged as sustaining our jurisdiction in the present suit.   In any event the appeal was prosecuted by the aggrieved husband against whom the alimony was entered, and there was no appearance by the appellee and our authority to review the judgment was not doubted.   If we had no right to review, the judgment of the district court which was rendered by one of competent jurisdiction would undoubtedly stand, and the parties would be bound by its decree.   The question was not presented and it was left wholly unconsidered in that decision.   The statute was not in our minds and not being invoked either to dismiss the appeal or affirm the judgment, it was not considered.   However it may be, we must, when the question is raised or when it suggests itself to us, proceed to determine it.

The first proposition to which our attention must be directed respects the condition and character of the decree. The appellant invokes a not unfamiliar principle laid down by the text writers as well as by the adjudged cases, that wherever a judgment has been entered, the entry of a second judgment in the same suit does not operate to vacate the first one if there be nothing to show that the former was canceled or set aside.   It may be a little difficult to understand that there may be two final judgments in the same suit, or that there may be one interlocutory and one final which ought of course to embrace within its terms everything essential to a final settlement of the rights of the parties.   We are not called on to speculate about the possibility of two judgments in the same suit and the entry of a second while the first

still stands, and whether we may then under such circum-
stances be compelled to resort to the one to interpret the
other, or whether a right of appeal will lie from one while
the first remains unchallenged.   As we view the record no
such case is presented.   Recurring to the statement of facts,
it will appear a final decree of divorce was entered in the
county court.   Therefrom an appeal was taken.   The case
then stood in the district court for trial *de novo*.   By consent
of parties that appeal was dismissed, the case sent back to the
county court with an order to open up the decree and hear
the parties on the matter of alimony which had been left
undetermined by the original decree.   The terms of the stip-
ulation are broad and comprehensive, and must conclude the
parties and therefrom and therefrom only must be determined
the form, character and terms of the decree ultimately entered
in the county court thereunder.   According to the stipula-
tion the cause was to be remanded to the county court and
redocketed, the decree was to be opened up and the county
court permitted to make the proper order with reference to
the payment of costs, counsel fees and alimony, and if neces-
sary enter its decree *nunc pro tunc*, reserving to the respect-
ive parties the right of appeal.   Thereunder the case went
back to the county court, was opened up and the parties pro-
ceeded to a hearing on the single question of alimony.   On
the evidence presented the court adjudged alimony to Mrs.
Mercer.   Our judgment of this proceeding is that the decree
now stands as it would have stood had this hearing with ref-
erence to alimony been had prior to its entry and prior to an
appeal to the district court.   In other words, that part of
the decree severing the bonds of matrimony, and that part
adjudging alimony to Mrs. Mercer formed part of and is prac-
tically one decree which, as an entirety under the evidence
produced upon both branches of the case and on the verdict
of the jury, settled and determined the rights of the parties.
We do not believe there are two decrees, but one and one
only.   Whether under circumstances like these the party
who has a decree of divorce, but against whom there is a judg-

ment for alimony, has an appeal we do not determine. Counsel of course remember the well settled principle of the appellate courts that the successful party can never appeal, but must seek a review by writ of error. The principle may not be applicable to cases where a party wins in part and loses in part, but the right of review by appeal may still exist. It is unimportant to consider it.

Having determined this question of the unity and entirety of the decree, we now come to the main question respecting our power to review. Under the act creating this court, found in the Session Laws of 1891, page 118, we may review any judgment entered either in the county or district court, and our determination will be final save in the excepted cases. This doctrine has been announced by this court and it has been approved by the supreme court whose province it is to determine the extent of our jurisdiction. Under that act there is no doubt of our jurisdiction to review this judgment. This jurisdictional authority is varied if at all by the divorce act of 1893 heretofore referred to.

The right of appeal is neither a constitutional nor a vested one unless there be some provision in the organic law conferring the right of review as is the case with writs of error from county courts. Otherwise the law always is that the right of appeal is a matter of statute and the courts must look alone to the statutes giving it to determine whether the right inures to the parties or the courts have jurisdiction. *Bailey v. Kincaid*, 64 N. Y. Supreme Ct. Rep. 516; *Kundinger v. City of Saginaw*, 59 Mich. 555; *In the matter of Storey*, 120 Ill. 244.

With this premise we proceed to determine the proper construction of the statute. One of the recognized and cardinal principles of statutory construction, at least in this country, is that the title of the act, as well as its general purpose and scope, may be looked at, in order to arrive at its proper construction. *Holy Trinity Church v. U. S.*, 143 U. S. 462. In this case, speaking by Mr. Justice Brewer, the law with reference to the title of an act for the purposes of con-

struction is very aptly expressed by the following quotation:
"Among other things which may be considered in deter-
mining the intent of the legislature is the title of the act.
We do not mean that it may be used to add to or take from
the body of the statute (*Hadden v. The Collector*, 5 Wall. 107),
but it may help to interpret its meaning. In the case of
*United States v. Fisher*, 2 Cranch, 358, 386, Chief Justice
Marshall said: ' On the influence which the title ought to
have in construing the enacting clauses much has been said;
and yet it is not easy to discern the point of difference be-
tween the opposing counsel in this respect. Neither party
contends that the title of an act can control plain words in
the body of the statute; and neither denies that, taken with
other parts, it may assist in removing ambiguities. Where
the intent is plain, nothing is left to construction. Where
the mind labors to discover the design of the legislature, it
seizes everything from which aid can be derived; and in
such case the title claims a degree of notice, and will have
its due share of consideration.' " The same rule has been ex-
pressed in other cases: *Oregon & C. R. Co. v. U. S.*, 67 Fed.
Rep. 460; *Proprietors of Mills v. Randolph*, 157 Mass. 345.

This has become an established doctrine in this country.
Acting under it we will note the title of the act of 1893,
which is: " An act to provide for a system of practice and
procedure in relation to divorce and alimony, and to repeal
certain acts in conflict therewith." According to that title
the purpose of the legislature was to provide a system of
practice and procedure with reference to divorce and alimony.
Prior to that time there had been no practice or system estab-
lished by statute. The grounds on which a divorce might
be had were matters of legislative enactment. Suits were
begun and followed under the rules and practice prevailing
in equity save as modified by code provisions. There was,
however, in no general or specific sense a statutory system of
procedure in divorce cases. The practice had become some-
what loose and it was evidently the legislative purpose to
provide a definite procedure for this class of cases. There

is a wide variance between the practice established by this act with reference to the commencement, continuance, trial and judgment in divorce suits and that which prevails in ordinary civil actions begun and ended under the code. These differences are noted simply to emphasize the fact that it was the legislative intent to provide a definite procedure by which the cases must be governed and the practice which parties to those suits must follow to obtain valid decrees. We now come to a consideration of that part of the act controlling the right of review. These provisions are found in sections 10 and 11 of the act. The trial court had the power, if there was no review or writ of error sued out, to open up the decree within a year. Failing to appeal or sue out a writ or move to open up the case the decree was conclusive for all time and could never be reopened. In this respect there is a difference between decrees for divorce and decrees in ordinary equitable suits. According to the provisions of section 11 an appeal would lie from this decree to the supreme court. The act also provided that a writ of error might be sued out to the supreme court to review the judgment, but there is a proviso that this writ of error must be sued out within six months from the date of the decree and not after.

This is a most significant limitation on the rights of the parties and a conclusive reason to sustain the theory of the legislative intent to provide a complete system of practice. Under the ordinary statute appeals lie either to the supreme court or to this. Writs of error may also be sued out either from the supreme court or from this to review final judgments or decrees. These writs may be sued out at any time within three years from the entry of the decree or judgment. These things conclusively demonstrate a well defined legislative purpose to provide a system of procedure. We believe therefore under the general rules of construction which always prevail in such cases that wherever a legislature attempts to enact a statute covering a subject-matter which has theretofore been an object of legislation and provide a complete system for it, we have a right to conclude that it was the leg-

islative purpose to repeal all acts inconsistent with it.    We are familiar with the rule that repeals by implication are not favored.    But wherever a new rule is provided and a complete system adopted, it will under all the authorities be taken as a repeal by implication if there are no direct words of repeal in the enactment.    Endlich on Interpretation of Statutes, p. 268, § 200; p. 270, §§ 201, 202, 204; Sutherland on Statutory Construction, § 137; *The State v. Conkling,* 19 Cal. 501; *Ill. & Michigan Canal Co. v. City of Chicago,* 14 Ill. 344; *Mears v. Stewart,* 31 Ark. 17; *Dowell v. Tucker,* 46 Ark. 438; *State v. Campbell,* 44 Wis. 529.

Many other cases will be found in the text books to which we have referred bearing on this general question.    While there are adjudications laying down the broad general doctrine that repeals by implication are not favored and that even affirmative words will not be taken as a repeal of the former statutes in the absence of absolute repugnancy or a repealing clause, the general proposition is approved by all text writers and by all courts that a repeal by implication may be inferred where there are affirmative provisions or where there is any repugnancy between the two statutes or wherever there is exhibited an evident purpose to provide a complete scheme or system of procedure governing and covering a particular class of cases which is inconsistent with the antecedent enactments.    *Crisp v. Bunbury et al.,* 8 Bing. 394; 21 English Com. Law, 592.

We are not compelled, however, to resort only to these general principles.    There is an express provision in the act of 1893 that appeals or writs of error shall lie from decrees in divorce suits to the supreme court within the limited time of six months.    We have also an express repeal of all acts in conflict with the statute.    This repealing clause is broad and sweeping, repeals all other acts on the subject of divorce and alimony, destroys the right to sue out a writ of error within three years and by necessary intendment deprives this court of jurisdiction to review decrees in divorce suits.    We have reached this conclusion after much argument and very great

and grave consideration. The attention which we have given to this discussion does not proceed from the desire which it has often been said formerly controlled chancellors, to wit, an ambition to reach out and extend jurisdiction to all cases which can by construction be brought within our power because the condition of the appellee's litigation is such as to incline us, wherever it is consistent with the rights of the parties and where we conceive it to be our duty, to refuse jurisdiction unless we conclude it is clearly within the scope and purview of our powers. We have less hesitation in reaching and expressing this conclusion because this is an appeal from a judgment of the county court. The cause was submitted before the passage of the late act, and under an adjudication of the supreme court the aggrieved party may take this case by writ of error or appeal to that tribunal which can then upon reargument and careful consideration examine the question with their great learning and ability, and determine whether we have erred in our conclusions, and if we have, insure to the parties the protection of their rights.

For the reasons herein expressed, this appeal must be dismissed.

*Dismissed.*