THE CHICAGO TERMINAL TRANSFER RAILROAD COMPANY

*v.*

FRANK H. WINSLOW *et al.*

*Opinion filed June 23, 1905.*

1. EJECTMENT—*what establishes a prima facie title.* A *prima facie* title in the plaintiff in ejectment is established by proof of conveyances of record showing title in the plaintiff, together with proof of possession by the plaintiff's grantors, even though possession by the plaintiff is not proved.

2. SAME—*what does not overcome prima facie proof of title.* *Prima facie* proof of title, consisting of a recorded warranty deed from the plaintiff's grantor together with proof of possession in the latter, is not overcome by proof of a contract for a deed executed by the same grantor many years after the warranty deed was executed and recorded but while she was still in possession.

3. CONTRACTS—*when contract for deed is notice that party does not claim to own fee.* A contract to make a deed for certain land for a railroad right of way and also for "all the right, title and interest which said party of the first part may have" in certain other premises, is notice to the railroad company that the proposed grantor did not claim to own the fee of the latter premises, particularly where there is a warranty deed on record showing she had long before parted with the title in fee to such premises.

4. LICENSE—*licensee cannot acquire a greater interest than the licensor possesses.* A tenant at will cannot, by executing a contract for a deed, create in the proposed vendee a greater interest than that of a tenant at will, even though the contract be regarded as a license to enter upon the land, under which the proposed vendee took possession.

5. SAME—*personal privileges do not pass under a foreclosure sale.* A purchaser of railroad property, on foreclosure, does not acquire a personal privilege of the mortgagor company existing by virtue of a mere license to occupy land as a tenant at will.

6. ACTIONS AND DEFENSES—*when assumpsit is not a proper remedy.* One holding possession of land under a contract for a deed, made by a mere tenant at will, is a trespasser so far as the owner of the land is concerned, and there is no implication of a contract to pay for the use and occupation, which would support an action of assumpsit by the owner.

7. SAME—*when bringing of assumpsit does not bar ejectment.* The bringing of a suit in assumpsit for the use and occupancy of

land, which is dismissed as soon as the plaintiffs discovered they had mistaken their remedy, does not bar a subsequent action of ejectment to recover possession of the land.

8. WILLS—*rule requiring a will to be first probated at testator's domicile is not absolute.* The general rule that a will must be probated, in the first instance, at the testator's domicile, is subject to the exception that it may be probated in any county in any State where the testator left assets, particularly real estate.

9. TRUSTS—*when a trust is not executed by the Statute of Uses.* Where a trustee is required to hold the legal title in order to perform his duties, such as investing the proceeds or principal or applying the income, raising a certain sum of money for some prescribed purpose from the income, or protecting the estate for a given time or until the death of some person or until division, the trust is active, and is not executed by the Statute of Uses.

APPEAL from the Circuit Court of Cook county; the Hon. JULIAN W. MACK, Judge, presiding.

JESSE B. BARTON, for appellant.

OLIVER & MECARTNEY, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an action of ejectment brought by Eliza Jane Starr, trustee under the last will and testament of Lewis M. Starr, deceased, against appellant. After the bringing of the suit Eliza Jane Starr died, and appellees, being made trustees under the will, were substituted. The suit was brought to recover possession of the east 33 feet (except the south 260 feet thereof) of the south thirty acres of the southwest quarter of the south-east quarter of section 1, township 37, north, range 13, east of the third principal meridian, situated in Cook county. The cause was tried before a jury, and at the close of the testimony the plaintiffs asked the court to instruct the jury to find the issues for the plaintiffs, which was accordingly done and judgment entered for the plaintiffs for the property above described, and this appeal is prosecuted from that judgment.

The facts, as briefly stated, show that in 1872 one Timothy W. Lackore, who had been in possession of the strip of land in question for many years, delivered possession thereof to Harriet B. Kellogg and her husband, Dr. John L. Kellogg, and that they continued in possession until 1878, when Lackore executed a quit-claim deed to the premises in dispute, together with other lands, to Harriet B. Kellogg. In 1885 Harriet B. Kellogg conveyed the strip in question, with other lands, to Lewis M. Starr by statutory warranty deed, but continued in possession of the premises until 1891, during which time she entered into a contract for deed with the Chicago Central Railway Company, who in 1891 went into possession. It is conceded that appellant in this case succeeded to whatever rights the Chicago Central Railway Company had. The deed from Mrs. Kellogg to Starr was recorded the same day it was executed and delivered. It appears from the record that in the following year, 1892, Harriet B. Kellogg filed a bill in chancery in the circuit court of Cook county to have the deed to Lewis M. Starr declared a mortgage and to redeem. She was unsuccessful in this proceeding, and in 1895 the bill was dismissed and a decree entered on cross-bill confirming the title to Lewis M. Starr. Three years after this decree was entered the trustees under the will of Lewis M. Starr commenced suit in assumpsit against appellant for the value of the land. A plea of non-assumpsit was filed, and in October, 1897, by stipulation of all parties interested, the suit was dismissed without costs to either party. In October, 1899, this suit in ejectment was filed.

In making out their case plaintiffs introduced the deed of Timothy W. Lackore to Harriet B. Kellogg, the deed from Harriet B. Kellogg to Lewis M. Starr, a certified copy of the record of the will of Lewis M. Starr, and also a certified copy of the record of probate of the will of Eliza Jane Starr, wife of Lewis M. Starr, and proved possession of the grantors Kellogg, and thereby established a *prima facie* title, and such

*prima facie* title having been established, it devolved upon the defendant to successfully overcome that title. (*Stowell* v. *Spencer*, 190 Ill. 454; *Anderson* v. *McCormick*, 129 id. 308.) It was said in the case of *Harrell* v. *Enterprise Savings Bank*, 183 Ill. 541: "Where there is proof of prior possession by the grantor, or others under whom he claims and to whose title he is privy, and he or those under whom he holds claim to be the owners of the fee, the law is well settled that in an action of ejectment such proof of prior possession is *prima facie* evidence of ownership and seizin sufficient to authorize a recovery, unless the defendant shows a better title.—*Barger* v. *Hobbs*, 67 Ill. 592; *Benefield* v. *Albert*, 132 id. 665." The question, therefore, to be determined is whether or not appellant has made out or shown a better title than appellees.

All of the above conveyances were of record, and it will be seen that the only source from which appellant claims title was through and by virtue of the above named contract for a deed which was entered into with Harriet B. Kellogg five or six years after she had conveyed all her interest in and to said property to appellees' testate, Lewis M. Starr, by deed appearing of record at the time appellant contracted with Mrs. Kellogg. The decree of the court afterwards confirmed the title in the said Lewis M. Starr.

It was not necessary for appellees to have proven possession in Starr, as contended by appellant, as legal title is all that is required to maintain ejectment. The appellant went into possession under a contract with one who the record showed had parted with her title five years before and without any license or covenants from the real owner, and certainly possession under a contract with one who held no legal title is not sufficient to overcome a record title with previous possession. Both parties claimed title from the same source, viz., Mrs. Kellogg, and appellant is in no position to question her title. Appellees held the title by reason of a deed of record, while appellant simply claimed by reason of

the contract. We think there can be no question but that appellees held and proved a *prima facie* title and that it can not be held that appellant has shown a better title.

By the contract dated July 22, 1890, Harriet B. Kellogg and her husband promised to convey to the Chicago Central Railway Company certain lands specifically described therein and not in controversy in this suit, for a right of way for said railroad; also "all the right, title and interest which said party of the first part may have in" the premises now in controversy, describing the same. The conditions of the contract were, that the railroad company was to build a depot at Ninety-fifth street, to cost $1000, and to stop all suburban passenger trains at the said depot or station. The deed was to be made when the road was ready for operation. There were no covenants of title in the contract. The portion of it that related to the land in controversy was notice to the railroad company that Mrs. Kellogg did not claim to own the fee, else she would not have used the language that she did and different language to that used in relation to the other land that was included in the same agreement and about which there is no controversy.

It is said, however, by appellant, that conceding that the deed from Mrs. Kellogg to Starr was notice to the Chicago Central Railway Company of the conveyance to Starr, as Mrs. Kellogg was in possession, and although the contract between her and the railroad company may have been such that the railroad company could not enforce it so as to affect the rights of Starr, still it amounted to a license to enter upon the land. It is contended that under the contract appellant succeeded to the rights of the Central Railway Company and therefore it was holding under the same license, and that while holding under that license the Starrs brought a suit in assumpsit, which they might do, for use and occupation under the license, and that the bringing of that suit was an election on the part of the Starrs to recognize and enforce the license, and that the present suit is barred by the

bringing of the suit in assumpsit. This position is not sound. If the contract between Mrs. Kellogg and the Chicago Central Railway Company could be treated as a license to enter upon the land, the right acquired under it could be no greater than was the right and interest of Mrs. Kellogg, which was merely that of a tenant at will or sufferance of Starr, to whom she had made a warranty deed for the premises. When an end was put to the tenancy, the rights of all persons holding under her, and likewise under the license, were terminated. A license such as is claimed arose under this contract from Mrs. Kellogg was not assignable or transferable. Ordinarily a license is strictly confined to the original parties and is a strictly personal privilege, and can neither operate for nor against a third person. Appellant acquired the property of the Chicago Central Railway Company by foreclosure, and cannot be said by that purchase to have acquired any license right that was personal to the former company. Furthermore, a license such as is here invoked cannot be granted by a mere occupant of the premises so as to affect the real owner. The fact that appellant is or its predecessor was a railroad company and authorized to condemn property for railroad purposes gave it no greater right to contract than a private citizen has. It did not proceed under the right of eminent domain nor did it occupy the land with the consent of the owner. So far as the owner was concerned it was a trespasser. In such a case the action of assumpsit was not a proper remedy. That action only lies upon a contract, express or implied. Appellant does not claim to have been holding subservient to or under the title of Starr, but claims to have been holding adversely to him and all the world, and from that relation no implication of a contract to pay for use and occupation would arise. *Lloyd* v. *Hough,* 42 U. S. 153; Cooley on Torts, 95.

As the action in assumpsit was inappropriate, appellant cannot invoke the rule of estoppel by suit brought in assumpsit in the present action of ejectment. Appellees were not

put to their election, but were mistaken in their remedy. (*Garrett* v. *Farwell Co.* 199 Ill. 436.) As soon as the mistake was ascertained the suit was dismissed. There was no change in the status of appellant in consequence of that suit, and if there had been an election, which we do not admit, it could have only operated as a license, which was revocable at the pleasure of appellees and was revoked by the bringing of the ejectment suit. The proposition that the railroad company may enter the land of the owner by collusion or contract with the tenant and have such possession as entitles it to hold the land and force the owner to some proceeding for compensation, is to ignore and render useless the law of eminent domain.

The will of Eliza Jane Starr was admitted in evidence over the objection of appellant, and it insists that the court erred in admitting it for the reason that the will was probated in King county, in the State of Washington; that the residence of the testatrix at the time of her death was in San-Francisco, Cal., and that the will could not be lawfully probated primarily in any place other than SanFrancisco, the place of the testatrix's residence; that no court other than that in the place of her residence was authorized to admit it to probate. Although the will might be probated in other States where the testatrix owned property, such latter probate could only be ancillary to the original probating, and would not be the best evidence of the probate of a foreign will in this State. The record introduced contains the petition for probate, the depositions of the witnesses, a copy of the will, an order of the court admitting it to probate, and the proper certificates authenticated according to the act of Congress. The petition showed, and the court found, that the will was made in King county, in the State of Washington, and that the witnesses thereto and the executors named in the will resided in the State of Washington. It also showed that the testatrix was possessed of and devised by the will an estate of about $123,000 of personal and real property, and

that she had in King county, in the State of Washington, and in Pierce county, in that State, real and personal property of the value of $94,000. The court found that it had jurisdiction to, and did, admit the will to probate. While the rule, generally speaking, is that a will should be probated in the first instance at the testator's domicile, it is subject to the exception, which is almost as broad as the rule itself, that it may be probated in any county in any State where the testator had and left assets, particularly real estate. 23 Am. & Eng. Ency. of Law, (2d ed.) 116; *Gordon's case,* 50 N. J. Eq. 399; *Stevens* v. *Gaylor,* 11 Mass. 255; *Varner* v. *Bevil,* 17 Ala. 286; *Pepper's Estate,* 148 Pa. St. 5; *In re Estate of McDonnell,* 130 id. 480; *In re Story's Estate,* 120 Ill. 244.

Lewis M. Starr died testate and the owner of the property in question, and by his will named his wife, Eliza Jane Starr, and his brother, Addison M. Starr, as executors, and provided by the will that in case of·the death of his executors before the expiration of the trust the survivor should be charged with the whole trust, and was vested with power to appoint, by will, successors in trust. Both the named executors died before the expiration of the trust. Addison M. Starr died first. Eliza Jane Starr, by her will, appointed appellees successors in trust. The property in question fell within the residuary clause, which granted certain property to the trustees, being the residuum after specially described property had been disposed of. Said residuum was subject to certain special trusts, viz.: (1) To pay debts, and for that purpose to sell or mortgage the property; (2) to raise a fund for the education of his children and support of his wife. The children were to be paid $1200 per year, each, and the widow $2500 per year until the respective children should reach the age of twenty-five years. As each child reached the age of twenty-five years it was to be paid $20,000. If it died before that age its portion was to be equally divided among the survivors. The sons were forbidden to mortgage, encumber or dispose of, or in any manner attempt

to dispose of, the property they were to receive under that provision until the actual transfer of it to them by the trustees, and the trustees were given the power, in order to make the payments to the sons, of selling or mortgaging any of the property, real or personal. The tenth condition or provision under clause 7 of the will is as follows:

"*Tenth*—In the management of my estate my trustees shall have all the powers of absolute owners of the property, so far as the same shall not be inconsistent with the directions herein contained, except the power to sell or mortgage real estate, and shall also have that power, so far as the same is herein and hereby specifically conferred and also so far as they may be advised or empowered so to do by a court of competent jurisdiction, in cases in which the exercise of such power shall appear to the court and the trustees to be beneficial to the estate and to the *cestuis que trust* hereunder."

It is claimed by appellant on the authority of *Walton v. Follansbee,* 131 Ill. 147, that this last provision is such a restriction upon the powers of the trustees as deprives them of the fee simple title to this estate, and that not having the fee they cannot maintain this suit. We do not regard the case relied upon as sustaining appellant's contention, for the reason that the facts upon which that case was decided are not analogous or similar to the facts in the case at bar. There a trust was created by deed to trustees for the use of the wife of the grantor for life, and in case of the death of the wife before the grantor the deed contained the provision that "the property above described shall descend to and vest in her children, and in default of children surviving shall revert to said party of first part." In that case it was held that the grant was to the trustees for the life of the wife or the joint life of the husband and wife, and that they did not take the fee. As to the residuum in the case at bar, no part of it is granted to the children of the testator but the whole grant is to the trustees, with the mere direction to pay to the children certain sums for their keep and education, and a

further sum of $20,000 contingent upon their attaining the age of twenty-five years. The ownership of the trustees was absolute for the purpose, and section 10 above was designed to make that fact clear, and nothing more. The trustees were to receive the rents and profits, mortgage and sell property for the purpose of the trust, pay taxes, and annually distribute the income according to the provisions of the trust until the period arrived for distribution among the beneficiaries,—not of a specific property, but of certain sums of money to be paid them by the trustees. Nor were they to receive the rents and profits or to enjoy the use and occupation of the property, but were to receive specific sums derived from the rents, profits and interest of the trust property received by the trustees, and to be paid out by them according to the provisions of the will.

In construing the Statute of Uses three rules are applied whereby conveyances are excepted from its operation, viz.: (1) Where a use was limited upon a use; (2) where a copyhold or leasehold estate or personal property was limited to uses; (3) where such powers or duties were imposed, with the estate, upon a donee to uses that it was necessary that he should continue to hold the legal title in order to perform his duty or execute the power. (Hill on Trustees, 230; 1 Perry on Trusts,—2d ed.—sec. 300.) Special or active trusts were never within the purview of the statute, and if powers or duties are imposed upon a donee to uses, or, in other words, a trustee, which make it necessary that he should continue to hold the legal title in order to perform his duty or execute the power, the trust is such a special or active trust as will remain unexecuted by the statute. Among the uses falling within these rules is that of investing the proceeds or principal or applying the income to the estate; (*Exeter* v. *Odiorne,* 1 N. H. 232; *Ashhurst* v. *Given,* 5 W. & S. 323;) also to raise a certain sum of money for some prescribed purpose from the income of the estate; (*Stanley* v. *Leonard,* 1 Edw. Ch. 87; *Wright* v. *Pearson,* id. 110;) to exercise

control over the estate for the purpose of preserving contingent remainders; (*Vanderheyden* v. *Crandall,* 2 Denio, 9;) or to protect the estate for a given time, or until the death of some person, or until division. (*Williams* v. *McConico,* 36 Ala. 22; *Nelson* v. *Davis,* 35 Ind. 474; *Morton* v. *Barrett,* 39 Am. Dec. 575; Beach on Trusts, sec. 403.) The trust under the will at bar falls within the several conditions or set of circumstances above enumerated wherein the trust is held not to be executed.

We are satisfied it was necessary for these trustees to retain control of the property until the trust was discharged, that their duties were active, and that no other person was authorized to bring the action of ejectment.

We find no error in the record that would justify a reversal, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*