(No. 27129.—

HERBERT C. SCHULTZ *et al.*, Appellees, *vs.* CHICAGO CITY BANK AND TRUST COMPANY, Exr., *et al.*, Appellants.

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 11, 1943.*

RATHJE, HINCKLEY, BARNARD & KULP, (FRANKLIN J. STRANSKY, FRANCIS E. HINCKLEY, and HERBERT C. STRAUSCHILD, of counsel,) for appellants.

HUMMER, VAN NESS & YOWELL, (JOHN J. YOWELL, and ELBERT A. WAGNER, JR., of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

William R. Schultz died testate in Los Angeles, California, on December 12, 1939, leaving an estate consisting entirely of personal property located in Chicago. His will was admitted to probate in Cook county, Illinois, and letters testamentary issued thereon to the Chicago City Bank and Trust Company, named in the will as executor. By his will the testator bequeathed his entire estate, after the payment of debts, to said bank as trustee and directed that out of the net income therefrom his sister-in-law, Pauline Schultz, should be paid the sum of $400 a year for and during her lifetime. Upon her death the trustee was to divide the entire trust estate then in its possession, together with any accumulations thereon, equally between the Addison Manual Training School for Boys and the Addison Industrial School for Girls. These legatees are Illinois corporations not for profit.

Appellees are the children and only heirs-at-law of the testator from whom he had long been estranged and he specifically stated in his will they were not to participate in the distribution of his estate.

On June 17, 1941, appellees filed their petition in the probate court of Cook county alleging that at the time testator made his will on July 16, 1937, he was a resident of Chicago, Illinois, but that shortly thereafter he moved to the State of California, with the intention of making said State his permanent and only domicile; that he became a resident of said State and domiciled therein and so continued until his death. The petition sets forth the provisions of the California statute prohibiting charitable bequests in excess of one third of the estate of a testator who leaves descendants and providing that all property bequeathed contrary to the provisions of such statute shall go to the descendants of such testator to the extent they would have taken but for such bequests. The relief prayed was that the State of California be declared to be the legal domicile of the testator at the time of his death; that the bequests to the two schools be so reduced that the aggregate thereof shall not exceed one third of the entire estate; and that two thirds of the estate descend and be distributed as intestate estate. The executor and the schools answered, denying that the State of California was the permanent residence and domicile of the decedent. After a hearing on the petition and answer the probate court found that the State of Illinois, and not the State of California, was the legal domicile of the testator at the time of his death, decreed that no part of his estate be distributed as intestate estate, and dismissed the petition. Upon an appeal to and trial *de novo* in the circuit court the same finding was made. The judgment of the probate court was affirmed and appellees' petition denied. Appellees then prosecuted a further appeal to the Appellate Court. That court reversed the judgment of the circuit court and re-

manded the cause with directions to enter a judgment that the testator, William R. Schultz, was domiciled in California at the time of his death, that the trustee pay to Pauline Schultz, during her lifetime, out of the net income of the trust estate the sum of $400 a year; that two thirds of the estate, less an amount sufficient to provide for the payment of the annuity to Pauline Schultz without reducing the one third to be paid to the schools, shall descend and be distributed as intestate estate in accordance with the laws of California and that the bequests to the schools be so reduced that each school will receive one sixth of the estate without reduction because of the annuity to Pauline Schultz. A petition for leave to appeal to this court has been allowed.

The contentions of appellants are that the judgment of the Appellate Court should be reversed because: (1) said court, by its judgment, erroneously assumed jurisdiction which it did not possess to construe the last will and testament of William R. Schultz, deceased, and to construe, modify, and supervise the trust created by said will; (2) the record does not show that the bequests to the Illinois charities will exceed one third of the estate contrary to the provisions of the California statute in appellees' petition mentioned; (3) the interest of Pauline Schultz, who was not a party to the litigation, was vitally affected; (4) the entire estate of the deceased, being located in Illinois, the laws of this State must govern its administration and control construction of the will and the trust created thereby; (5) the California statute relied upon, being arbitrarily discriminatory against charitable and benevolent societies and corporations of other States and against the public policy of this State, should not, as a matter of public policy, be enforced by the courts of this State. Briefly stated, appellants' position is that the probate court, and consequently also the circuit and Appellate courts, had no jurisdiction to order decedent's estate distributed in

accordance with the laws of California; that these courts had jurisdiction to determine the question of domicile, the finding of the Appellate Court thereon being final and conclusive; and that irrespective of the decision on the question of domicile, the only proper judgment that could be made would have been to direct distribution according to the law of Illinois. Lastly,—and this the appellants urge upon us only in the event we should hold the Appellate Court had jurisdiction to construe testator's will by applying thereto the California statute and interpreting and construing the provisions of the will in the light of such California law to determine their validity, force and effect—that this court consider and determine the question of fact whether or not William R. Schultz was domiciled at the time of his death in the State of California. This dispute as to domicile was the sole issue on which the case was submitted to the probate and circuit courts.

The probate court is not a court of general jurisdiction. Its jurisdiction is defined and restricted by the constitution and limited to the subjects therein enumerated. (*Gordon v. Bauer,* 373 Ill. 357; *Howard* v. *Swift,* 356 Ill. 80.) By section 20 of article VI of the constitution, original jurisdiction of the settlement of estates of deceased persons and of all probate matters is vested solely in the probate courts. Upon an appeal to the circuit court from any order, judgment or decree of the probate court, the cause is tried *de novo.* (Ill. Rev. Stat. 1941, chap. 3, par. 487.) The trial *de novo,* however, must be limited to the issues tried in the probate court from which the appeal is taken. It cannot extend to other issues not before, or passed upon by, the probate court wherein the original trial was had. (*Bley* v. *Luebeck,* 377 Ill. 50.) While it is true the probate court has no general equitable jurisdiction, it is well established that it exercises equitable powers in connection with probate matters. (*In re Estate of Blyman,* 382 Ill. 520; *London & Lancashire Indem. Co.* v. *Tindall,* 377 Ill. 308.)

The probate court has jurisdiction to construe a will insofar as is necessary to determine the rights of legatees thereunder. (*Kerner* v. *Peterson*, 368 Ill. 59; *Strawn* v. *Jacksonville Academy*, 240 Ill. 111; *Kolb* v. *Landes*, 277 Ill. 440.) Section 291 of the Probate Act, (Ill. Rev. Stat. 1941, chap. 3, par. 445,) gives the probate court power to enforce the settlement of estates and to order the executor or administrator to distribute the estate to the persons entitled thereto. There can be no doubt that the probate court possessed jurisdiction to order distribution of the estate of William R. Schultz, deceased, and to construe his will as a prerequisite thereto.

We are next to consider whether the question of domicile involved in this case is open to review in this court, or whether the decision of the Appellate Court is final and conclusive as to such question of fact.

We have held that the probate court was exercising equitable jurisdiction and therefore, upon appeal to this court, we were not bound by the findings of fact of the Appellate Court in proceedings for the final settlement of the accounts of guardians, (*Cheney* v. *Roodhouse*, 135 Ill. 257,) for the adjustment and allowance of claims against the estates of deceased persons which are enforceable upon equitable principles, (*Henry* v. *Caruthers*, 196 Ill. 136; *Clemens* v. *Crane*, 234 Ill. 215; *Estate of Ramsay* v. *Whitbeck*, 183 Ill. 550;) objections to the final account of an executor, (*Tanton* v. *Keller*, 167 Ill. 129; *Bliss* v. *Seaman*, 165 Ill. 422;) and in proceedings for a finding of heirship. *Welch* v. *Worsley*, 330 Ill. 172.

In the instant case the relief sought by appellees in their petition invoked the equitable jurisdiction of the probate court and could not have been granted by the court without exercising equitable powers and applying equitable principles.

The decedent, William R. Schultz, was born in Chicago and resided there exclusively until he was in his late sixties.

He was then employed by the Chicago City Bank and Trust Company and had been so employed for approximately twenty years or longer. Prior to that time he had been engaged in the grocery business. He became divorced from his wife in 1914 or 1915 and, after that, lived alone in hotels and rooming houses. He enjoyed reading and did not associate with many people. He was also fond of music and played the violin.

In the latter part of 1936 or early in 1937, feeling that he had put in a lifetime of work, he voluntarily retired from his position with the bank. He was then living in a room at the Englewood Y.M.C.A. He told his closest friend, William R. Crow, that he was going to take a bus and travel to the west coast; that he would ride as far as he could each day until he was tired, then stop off, look at the scenery and when he found a place that he liked he was going to stay there. He placed his securities in what was called a safekeeping account with the Chicago City Bank and Trust Company. Such safekeeping account was a service offered by the bank to customers for the temporary custody of their securities. It was not of a permanent nature. The duties of the bank were collecting interest, dividends and other profits and putting the same in the account of the owner according to instructions. He gave up his room at the Y.M.C.A. He brought his clothes, pictures, personal papers and letters, his violin, books and featherbed to the home of his brother. He asked his sister-in-law to keep his pictures for him because he intended to make a home again for himself in Chicago. He then took a part of his clothes with him in a small suitcase and traveled by bus to California, where he remained until the following July when he returned to Chicago on account of the death of his brother. While there he met his friend Crow in a restaurant, and told him he liked California and thought he would stay out there. He remained in Chicago for a period of about two weeks after

the funeral, before returning to California, and it was during this time that he made his will. Appellees concede that at this time he was a resident of and domiciled in the city of Chicago.

When he left the second time for the west coast, he took nothing with him except the clothes he brought with him in his suitcase. On this second trip he sent a post card to his sister-in-law, Pauline Schultz, from Vancouver, British Columbia, on September 13, 1937, stating he was there for a week. The next heard from him was a post card mailed her from San Francisco, on November 1, 1937, stating he was there for a month and had stopped at Seattle, Tacoma and Sacramento. On May 10, 1938, he wrote his sister-in-law he was going to spend another year in California and was in Long Beach for the summer. Six days later he wrote her again from Long Beach, repeating that he was staying in California for another year; that he would be there for some months and would keep her posted if he moved. June 4, 1938, he wrote his cousin, Florence Much, in Illinois, that he expected to stay in California another year and was in Long Beach for the summer. The following November he wrote Pauline Schultz, asking her to send him his brown suit, enclosing one dollar to pay the expenses of mailing and telling her if it cost more he would pay it when he saw her next summer. On May 6, 1939, he wrote her, "I am sick, in case anything happens I told them to notify you." On May 22, 1939, he wrote that he had been terribly sick and was coming back to Chicago as soon as he was able to travel, perhaps in two or three weeks. A month later, in a letter written to the officer of the bank in charge of his safekeeping account, he told him that he was very sick, nothing but skin and bones, that he thought he would be three or four months picking up his strength so he did not know when he would be back in Chicago. August 23, 1939, his cousin, Henrietta Kolbenschlag, visited him while

she and her husband were on a vacation in California. He told her he liked the country and the climate agreed with him. He said they were very good to him at the hotel and that was his home. This was in response to her entreaties to him to come home because he was in ill-health and far from either relatives or friends. On October 3, 1939, he wrote his cousin, Florence Much, "Am staying here for the winter." On October 6, 1939, he wrote Mrs. Schultz, asking her to send him his new overcoat, the black fuzzy one, saying, "I am not much better still very weak so I am staying here this winter so please send me the new overcoat." .

It is shown by the record that, when registering at various hotels in California, he gave his address or residence as Chicago and that he filed his income tax returns with the Collector of Internal Revenue at Chicago.

It is not disputed that the domicile of the decedent at the time he executed the will when in Chicago in July, 1937, was in this State. A domicile once established whether by origin or choice continues until a new domicile is actually acquired. (*Pope* v. *Board of Election Comrs.* 370 Ill. 196; *Miller* v. *Brinton,* 294 Ill. 177.) In considering appellees' contention that there was a change of decedent's domicile, we must bear in mind that residence and domicile are not synonymous and that there is a distinction between the two. (*Pope* v. *Board of Election Comrs.* 370 Ill. 196; *Clark* v. *Quick,* 377 Ill. 424.) The domicile of a citizen may be in one State or Territory and his actual residence in another. (*Wells* v. *People,* 44 Ill. 40.) The domicile is the place where a person lives and has his true, permanent home, to which, whenever he is absent, he has an intention of returning, the question of a person's domicile being largely one of intent. (*Peirce* v. *Peirce,* 379 Ill. 185.) To effect a change of domicile there must be an actual abandonment of the first, coupled with an intention not to return to it, and there must be a new one acquired,

with actual residence in another jurisdiction, coupled with
the intention of making the last-acquired residence a per-
manent home. (*Hayes* v. *Hayes,* 74 Ill. 312; 17 Am.
Jur. 601.) An essential element in the acquisition of a
new domicile is the abandonment of the former one. The
facts of actual removal and actual residence in the new
locality without the intention there to remain avail nothing.
17 Am. Jur. 601.

Applying these rules to the evidential facts shown in
the record, it is clear that Schultz was not attempting to
retain or acquire a domicile for any particular purpose
and that, so far as he knew, the matter of his domicile
made no difference to him and had no effect on the dispo-
sition of his estate. He had in his mind no consciousness
of the legal effect of his domicile upon the validity of his
will or upon the disposition of his estate. He left in
Chicago all of his personal effects, his violin which he
prized so highly, his books, pictures, personal letters and
his papers, taking with him only a portion of his clothes.
All of these articles, except only his brown suit and his
black overcoat, remained in Chicago until the date of his
death. It is clearly apparent from the evidence that dur-
ing his entire residence in California, he never abandoned
his intention of returning to Chicago, or ceased to regard
it as his true, permanent home. We attach but little sig-
nificance to his statement made to his cousin, Mrs. Kolben-
schlag, that they were very good to him at the hotel and
that it was his home. He was seeking to reassure her as
to his welfare and to allay her anxiety on his behalf.

We are of the opinion that William R. Schultz, while
in California, had no intention of making that State his
permanent home; that he never ceased to regard Chicago
as his home, never relinquished his intention of returning
thereto and that his domicile remained and was, at the time
of his death, in Illinois, where he had resided during all
of his active life, where all his property was and where

158

all his intimate and personal belongings were left in care of his sister-in-law until his return. The view we have taken upon the question of domicile renders unnecessary a determination of the additional points urged by appellants.

. The judgment of the Appellate Court is reversed and the judgment of the circuit court is affirmed.

*Appellate Court reversed; circuit court affirmed.*