MARY LOUISE FINK, Plaintiff-Appellant, *v.* WALTER R. FINK, Defendant-Appellee.

Third District    No. 75-12

Opinion filed March 16, 1976.—Rehearing denied May 19, 1976.

Dobbins, Fraker & Tennant, of Champaign (Richard M. Joy, of counsel), for appellant.

Glenn J. Church, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

We are asked to decide whether the Circuit Court of Peoria County erred when it gave full faith and credit to a Nevada divorce obtained by the defendant Walter R. Fink. At the conclusion of the bench trial on plaintiff's suit to have the Nevada decree declared void, the trial court ruled in favor of defendant.

Walter and Mary Fink were married in 1943, and separated in 1970. At the time of trial, the youngest of their three children was 18 years of age.

Plaintiff obtained a decree of separate maintenance against the defendant in Peoria County on February 4, 1972.

Defendant, who had a master's degree in school administration, had taught in the Peoria schools for 20 years and also more recently taught part-time at Illinois Central Junior College, Peoria. As a tenured teacher, defendant had a master contract which continued from year to year unless terminated by either party. Defendant's contract at the junior college originated each semester that he was needed, and in the spring of 1972 he had informed the college that he would teach again in the fall.

On June 6, 1972, defendant terminated the lease of his rented room, took most of his personal property, and moved to Reno, Nevada, telling only his son, his landlady and Susan Smith, his girlfriend, that he intended to make Nevada his permanent home. He did not resign from either teaching position in Peoria, but left continued employment open as a viable option if he could not find suitable employment in Nevada. He retained a checking and a savings account in Peoria, where his school checks continued to be deposited monthly and upon which he drew for expenses in Nevada. He made no inquiries about Nevada employment before leaving Illinois, but he did write to an attorney in Reno, Nevada, in the fall of 1971 inquiring about Nevada divorce laws and was sent a brochure, published by the Nevada Bar Association, explaining the residency requirements of the Nevada statute. Before defendant went to Nevada he had told plaintiff more than once that he wanted a divorce, he had consulted an Illinois attorney about a divorce, and he had discussed marriage with Susan Smith.

Defendant left Peoria two days after the school term ended, and returned one week before the fall term began, spending 73 days in Nevada. Upon arriving in Nevada, defendant rented a furnished apartment on a monthly basis, opened a bank account, obtained a Nevada driver's license, surrendered his Illinois driver's license, sought a job as a teacher or as an auto repair mechanic, for which he was also trained, and took a temporary job as a cab driver. Soon after his arrival, he obtained the same counsel he had written to in the fall of 1971 and filed suit for divorce; he obtained service of process on plaintiff, who disregarded the Nevada proceedings; and on the return date he obtained a decree of divorce by default, which incorporated, in part, the terms of the separate maintenance decree in Illinois.

Having been unable to find suitable permanent employment in Reno, defendant left there on August 15, the same day the divorce decree was granted, and drove 50 miles to Lake Tahoe where he camped in a tent for two nights. In a town near Lake Tahoe he made one inquiry about a possible teaching position for the fall term.

He then returned to Peoria, re-rented his room from the same landlord

after another tenant vacated it, and resumed his teaching duties in late August 1972. He continued to comply with the provisions of the separate maintenance decree, and upon his return to Illinois he obtained a new Illinois driver's license. Relying upon the Nevada decree of divorce, defendant married Susan Smith in July of 1973, which was one month after the plaintiff had filed this action.

The trial court held that the decree of divorce in Nevada was entitled to full faith and credit unless the Nevada domicile of the defendant was fraudulently obtained, depriving the Nevada court of jurisdiction, and the court stated: "The Courts of the State of Illinois have not disturbed the findings of jurisdiction in the Decree of a Court of a sister state unless such findings are contrary to the manifest weight of the evidence. The evidence in this record does not so show."

Plaintiff contends that this decision of the trial court was against the manifest weight of the evidence, and that she sustained her burden of overcoming the presumption that defendant established a *bona fide* domicile in Nevada. We agree.

■■ The Nevada divorce decree was wholly *ex parte*. According to the well-established rule in *Williams v. North Carolina* (1942), 317 U.S. 287, 87 L. Ed. 279, 63 S. Ct. 207, under article IV, section 1, of the United States Constitution, all States must afford full faith and credit to an *ex parte* divorce decree. In the second *Williams* case, *Williams v. North Carolina* (1945), 325 U. S. 226, 89 L. Ed. 1577, 65 S. Ct. 1092, this rule was further defined. There the Supreme Court held that all States are entitled to determine for themselves the jurisdictional facts upon which a foreign decree is based and to withhold full faith and credit if not satisfied that the party asserting the foreign divorce was properly domiciled within the divorce-decreeing sister State at the time the decree was granted. Thus under *Williams* each State is permitted to make its own inquiry as to a party's domicile, and no State's determination can bind another on this issue.

Certainly a decree of a sister State enjoys a presumption of validity in the courts of Illinois. In *Esenwein v. Pennsylvania* (1945), 325 U.S. 279, 89 L. Ed. 1608, 65 S. Ct. 1118, it was held that the full faith and credit clause placed a duty on the Pennsylvania courts to afford *prima facie* validity to the Nevada decree. In the second *Williams* case, the Supreme Court declared that Nevada's finding that it had jurisdiction was entitled to "respect and more." Thus it is the burden of the party asserting the invalidity of a divorce in another State to prove the absence of a domicile by the spouse in the foreign jurisdiction.

■■ ■ When determining the *bona fides* of a new domicile, Illinois courts have said: "[T]he question of domicile is largely one of intention and * * * to establish a new domicile a person must physically go to a

new home and live there with the intention of making it his permanent home." (*Keck v. Keck* (1974), 56 Ill. 2d 508, 309 N.E.2d 217.) Also, where a person's conduct and lack of general preparation for an extended stay in Nevada fails to show an intention to establish a *bona fide* domicile there, the *prima facie* evidence of a valid Nevada divorce is successfully impeached, and Illinois courts need not give the decree full faith and credit. *Ludwig v. Ludwig* (1952), 413 Ill. 44, 107 N.E.2d 848.

Professor J. H. Beale of the Harvard Law School, in his learned and frequently cited article, *Proof of Domicil*, 74 Penn. L. Rev. 552, 560 (1926), has observed: "Since actions speak louder than words the conduct of a person is the most important evidence of his intention to acquire a domicile in a place."

■■ Declarations as to domicile may be contradicted by evidence of acts and conduct inconsistent with such declarations. In *People v. Moir* (1904), 207 Ill. 180, 69 N.E. 905, the court held that declarations, while admissible on the question of a change of residence, are entitled to but little weight where they are inconsistent with the acts of the party making them.

■■ When applying these general principles to a particular case, courts must take into account all of the acts connected with the move of a spouse to another State. (See, *e.g.*, *Atkins v. Atkins* (1946), 393 Ill. 202, 65 N.E.2d 801; *Cooper v. Cooper* (Iowa 1974), 217 N.W.2d 584; Annot., 36 A.L.R.2d 756 (1954).) Furthermore, on appeal, we are bound by the principle, "When testimony is contradictory, this court will not substitute its judgment as to the credibility of witnesses for that of the trial court which saw ʾand heard them, and will not disturb the findings unless they are manifestly against the weight of the evidence." *Stilwell v. Continental Illinois National Bank* (1964), 31 Ill. 2d 546, 549, 202 N.E.2d 477.

The evidence here concerning defendant's intent to establish a *bona fide* domicile demonstrates a few more Nevada contacts than were present in such cases as *Keck v. Keck* and *La Roche v. La Roche* (3d Dist. 1975), 32 Ill. App. 3d 475, 335 N.E.2d 518. As in those cases, defendant here consulted an attorney soon after arriving in Nevada, rented a furnished apartment on a monthly basis, obtained a divorce in the minimum time possible, left immediately after the decree was entered, returned to the same Illinois residence, and, as in *Keck*, he retained his job in Illinois and returned to it. In addition, here defendant had terminated the lease for his rented room, obtained a Nevada driver's license, opened a bank account, looked for employment, and took temporary employment as a taxicab driver.

Certainly the evidence in the case before us was not as conclusive of a change of domicile as it was in *Stilwell v. Continental Illinois National Bank*, where the husband lived in Arkansas for two years, voted and paid

taxes in Arkansas, executed his will there, naming an Arkansas bank as executor, and returned to Illinois one year after his divorce to obtain medical treatment for cancer, dying six months later in a Chicago hospital. When Stilwell's former wife challenged the validity of the divorce decree in a proceeding to claim a widow's pension, the court found the husband had been a *bona fide* resident of Arkansas and that the divorce decree was valid.

In determing whether the defendant Fink in fact intended to abandon his Illinois domicile and acquire a new one in Nevada, we can bear in mind his sitution at the time of his removal, the courses which prompted it, its purpose, and the place to which he removed. We can also give weight to the character of his search for employment in Nevada, and the retention of his tenured teaching position in Illinois. Another matter of concern is Susan Smith. Would a return to Peoria pick up threads of close association, or has he so severed his relations that his old community is as strange as another?

■■ Although we may not lightly cast aside the trial court's findings, we are persuaded that, considering the uncontradicted evidence in the record before us, the conclusion of the trial court was manifestly against the weight of the evidence. (*Grein v. Grein* (3d Dist. 1940), 303 Ill. App. 398, 25 N.E.2d 409.) To hold otherwise would be totally inconsistent with the holding of the Supreme Court in *Keck v. Keck*, where, under substantially similar facts, a Nevada divorce was found to be void.

In addition, we conclude that this case comes within the general rule that, in order to establish a new domicile, the intent to do so must be unqualified and not conditional upon the happening of some future event. (25 Am. Jur. 2d *Domicile* §26 (1966).) The trial court found that defendant did not terminate his contract with the Peoria schools, but "left further employment open as a viable option if he could not find gainful and suitable employment in Nevada."

Since defendant went to Nevada from Illinois, intending to make his home in Nevada if he could find suitable employment there, his domicile remained in Illinois when he was unable to obtain suitable work. *Wilkins v. Marshall* (1875), 80 Ill. 74; Restatement (Second) of Conflict of Laws §18, comment (b) (1971).

■■ Furthermore, the evidence in the record shows that defendant made only superficial efforts to find permanent employment in Nevada. His search for a teaching position, for which he was qualified by experience and education, and which would require him to enter into a contract, was conducted casually through conversations with waitresses and school personnel. The record does not reveal that he submitted any written applications or had any formal interviews. His first inquiries about a fall teaching position in Reno were made after July 1, about a month

after leaving Illinois. Instead, immediately upon his arrival in Reno, he looked for work as an automobile mechanic, which was not his regular line of work. Since the evidence established that, at best, defendant had no more than a conditional intent to reside permanently in Nevada, it was error for the trial court to conclude that he established a *bona fide* domicile there.

For the reasons given, we hold that the Nevada decree was void for lack of jurisdiction and is not entitled to full faith and credit in Illinois. The judgment of the trial court is reversed and this cause is remanded with directions to enter judgment for plaintiff.

Reversed and remanded with directions.

STOUDER and BARRY, JJ., concur.