*In re* ESTATE OF NATALIE ELSON, Deceased—(Margo Elson, Petitioner-Appellant, *v.* Dr. Ralph Elson, Respondent-Appellee).

Second District   No. 82—1002

Opinion filed December 30, 1983.

Mark L. Hellner, of Schwartz & Freeman, of Chicago, for appellant.

John F. Garrow, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

JUSTICE NASH delivered the opinion of the court:

Petitioner, Margo Elson, appeals from an order of the trial court which dismissed her petition for letters of administration. On appeal, she asserts that Natalie Elson, her deceased sister, was a resident of Illinois at the time of her death and had not changed her residence permanently from Illinois to Pennsylvania.

Natalie Elson died in the State of Pennsylvania on November 14, 1981, as a result of an automobile accident. Decedent's sister, Margo Elson, filed a petition for letters of administration in the circuit court of Du Page County, Illinois, on February 19, 1982, in which she alleged that Natalie was a resident of Du Page County at the time of her death. Decedent's father, Dr. Ralph Elson, entered a special and limited appearance and filed a motion to strike and dismiss the petition in which he asserted, among other things, that Natalie was domiciled in Pennsylvania at the time of her death. After consideration of the evidence the trial court determined that Natalie Elson was a domiciliary of Pennsylvania at the time of her death and, accordingly, dismissed the petition pursuant to Dr. Elson's motion. Margo Elson appeals.

Testimony at trial disclosed that Natalie Elson, who died at the age of 27, lived her entire life in Illinois, except for the five or six days she resided in Pennsylvania immediately prior to her death on November 14, 1981. According to one witness, Natalie's primary interest in life was horses and she had studied recreation and equine sciences or horsemanship while attending Southern Illinois University.

After graduating from college, Natalie completed an equestrian internship, taught horseback riding to handicapped children, trained horses, and trained with an instructor in Minooka, Illinois, to further her education. During the last six years she lived in Illinois, Natalie often changed residences and lived in six different places in Illinois during that period.

Natalie decided to study dressage at Hillview Farm in Pennsylvania under the tutelage of an instructor named Ralph Hill; she had studied dressage earlier in Minooka, Illinois. While in Pennsylvania, she was to be a working student whereby she would receive lessons in horsemanship in exchange for cleaning stalls and exercising horses at the farm and she lived in a boarding house across the road from Hillview Farm. Evidence was presented that Natalie's aspiration was to compete in the 1984 Olympics as a rider; also important to her was the improvement of her riding techniques and the acquisition of sufficient knowledge and expertise about riding and training horses to enable her to teach other people.

Shortly before her death, Natalie told her father that she would become rich and famous and would buy a horse farm where Dr. Elson could retire. She said she was going to look for real estate in Illinois on a part-time basis; that is why she had secured an Illinois real estate license. Natalie also informed her father she would return to Illinois to visit.

Natalie's former boyfriend, Kyran Cahill, testified that she had informed him shortly before departing for Pennsylvania that she would put her possessions in storage and would return to Illinois probably within a year; she was going to give it a year in Pennsylvania. It was his impression that she went to Pennsylvania as a student, not to move there, and that she would have returned to Illinois within a year. Patricia Hollowed, another friend of Natalie, stated that she had no reason to believe that Natalie intended to make Pennsylvania her permanent residence.

In her deposition Margo Elson stated that Natalie had informed her she intended to stay in Pennsylvania for approximately one year and then intended to return to Illinois to be a professional riding instructor. Margo also stated that she had no doubt that Natalie intended to return to Illinois for a few weeks to pick up her belongings to take them to her new abode, which could be anywhere as long as it furthered her goal of riding in the Olympics.

Joan Elson, Natalie's stepmother, found an unmailed letter in Natalie's room at the boarding house which she had written to her sister, Margo, on November 13, 1981, the day before Natalie died. In it the

decedent stated that she had "moved to Pennsylvania!" and that she had found a good home for her dog in Illinois.

When she departed for Pennsylvania, Natalie took her horse with her as well as a carload of personal belongings. Upon arriving in Pennsylvania, Natalie, who lived near the Pennsylvania-Delaware border, established bank accounts in Delaware. She also had a safety deposit box there which contained certificates of deposit, horse ownership papers, and the Illinois title to her car. According to her father, Natalie took all her personal property to Pennsylvania with the exception of items she left in storage in Illinois and a safety deposit box in Illinois which contained her jewelry. The items which Natalie stored in the warehouse included clothing, furniture and a saddle; the storage lease agreement listed her father's Deerfield, Illinois, residence as her mailing address and stated that she was employed at Hillview Farm in Pennsylvania. In addition, due to the fact that Natalie could not have a dog with her at Hillview Farm, she gave it to a friend in Illinois. It was also established that Natalie possessed an Illinois driver's license.

After Natalie's death, Dr. Elson was appointed administrator of her estate by a court in Pennsylvania which issued letters testamentary and he distributed all of the property which Natalie owned in Illinois. Dr. Elson was not certain whether his attorney in Pennsylvania had filed a wrongful death action there as a result of his daughter's death. The record also reflects that a wrongful death action was filed in Lake County, Illinois, on behalf of the doctor's ex-wife; Dr. Elson was granted leave to intervene in that suit as an heir of his deceased daughter.

Petitioner contends that the evidence failed to establish that Natalie Elson intended to abandon her lifelong residence in Illinois in favor of establishing residence in Pennsylvania. She asserts too that Dr. Elson, as objector to her petition for the issuance of letters testamentary, failed to satisfy his burden of proof that Natalie intended to abandon her Illinois residence permanently and establish Pennsylvania as her new, permanent residence.

■ The long-standing rule in Illinois is that although the terms "residence" and "domicile" have different shades of meaning, they are generally construed synonymously when used in statutes unless their meaning is limited by express definition or by the context of the act. (*Hatcher v. Anders* (1983), 117 Ill. App. 3d 236, 239.) While section 5—1 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 5—1) uses the word "residence" in setting forth the place for the probate of a will or the administration of an estate, the statute does

not expressly limit the word's meaning by definition. Also, it is clear that the courts of this State have employed the concept of domicile in probate matters. (See, *e.g.*, *Schultz v. Chicago City Bank & Trust Co.* (1943), 384 Ill. 148, 156-58; *In re Estate of Jackson* (1977), 48 Ill. App. 3d 1035, 1037-38.) Thus, it appears that the two terms are used synonymously under the Probate Act.

■■■ An Illinois circuit court in probate may exercise jurisdiction over the estate of a decedent either when the deceased was domiciled in Illinois or at the time of her death owned property in this State. (*In re Estate of Jackson* (1977), 48 Ill. App. 3d 1035, 1037.) "Domicile" has been defined as the place where a person has her true, permanent home to which she intends to return whenever she is absent. (*Keck v. Keck* (1974), 56 Ill. 2d 508, 514; *Schultz v. Chicago City Bank & Trust Co.* (1943), 384 Ill. 148, 156; *In re Marriage of Hanlon* (1983), 116 Ill. App. 3d 157, 160.) Domicile is a continuing thing, and from the moment a person is born she must, at all times, have a domicile. (*Stein v. County Board of School Trustees* (1967), 85 Ill. App. 2d 251, 257, *aff'd* (1968), 40 Ill. 2d 477.) A person can have only one domicile; once a domicile is established, it continues until a new one is actually acquired. (*In re Estate of Stahl* (1973), 13 Ill. App. 3d 680, 683; *Oswego Community Consolidated School District No. 434 v. Goodrich* (1960), 28 Ill. App. 2d 407, 417; see *Schultz v. Chicago City Bank & Trust Co.* (1943), 384 Ill. 148, 156.) To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intent not to return to it; also, physical presence must be established in another place with the intention of making the last-acquired residence her permanent home. *Schultz v. Chicago City Bank & Trust Co.* (1943), 384 Ill. 148, 156-57; *Miller v. Brinton* (1920), 294 Ill. 177, 186; *Stein v. County Board of School Trustees* (1967), 85 Ill. App. 2d 251, 257; see *Stilwell v. Continental Illinois National Bank & Trust Co.* (1964), 31 Ill. 2d 546, 548; *Hatcher v. Anders* (1983), 117 Ill. App. 3d 236, 239; *In re Estate of Jackson* (1977), 48 Ill. App. 3d 1035, 1038; *Fink v. Fink* (1976), 37 Ill. App. 3d 604, 607-08; *Oswego Community Consolidated School District No. 434 v. Goodrich* (1960), 28 Ill. App. 2d 407, 417.

■■■ The question of domicile, as it relates to a decedent, is one of the most difficult in the law because it turns on the proof of the intent of a deceased person. (*In re Estate of Jackson* (1977), 48 Ill. App. 3d 1035, 1038.) The matter of domicile is largely one of intention (*Keck v. Keck* (1974), 56 Ill. 2d 508, 515; *Fink v. Fink* (1976), 37 Ill. App. 3d 604, 607) and, hence, is primarily a question of fact (*Fry v. Fry* (1947), 332 Ill. App. 484, 493). Once a domicile is established,

it is presumed to continue (*In re McCalmont* (1958), 16 Ill. App. 2d 246, 255), and the burden of proof in such cases rests on the party who attempts to establish that a change in domicile occurred. (*In re Estate of Jackson* (1977), 48 Ill. App. 3d 1035, 1038; *In re McCalmont* (1958), 16 Ill. App. 2d 246, 255.) It is manifest that very slight circumstances often decide the question of domicile, and the determination is made based on a preponderance of the evidence in favor of some particular place as a domicile. (*Fry v. Fry* (1947), 332 Ill. App. 484, 492.) In addition, in light of the factual issue to be decided, the resolution of the question of domicile depends upon the facts and circumstances of the particular case, for precedents with different factual patterns are of slight assistance. 332 Ill. App. 484, 492.

■ Margo Elson asserts that Dr. Elson failed to sustain his burden of demonstrating that his deceased daughter Natalie permanently abandoned her residence in Illinois with the intention of becoming a permanent resident of Pennsylvania. She correctly notes that affirmative acts of abandonment of the Illinois residence must exist and that a temporary absence from Illinois, even if lengthy, does not necessarily equate with abandonment. *Davis v. Davis* (1973), 9 Ill. App. 3d 922, 926.

■ It is well established that the trial judge, as the trier of fact, is in a superior position to hear and weigh the evidence and determine the credibility and demeanor of the witnesses. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356; *Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 122; *Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 619.) Accordingly, a court of review will not reverse a judgment unless the findings are clearly and palpably contrary to the manifest weight of the evidence. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356; *Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 122.) For a finding or judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 122; *Telander v. Posejpal* (1981), 94 Ill. App. 3d 616, 621.) A reviewing court may not overturn a judgment merely because it might disagree with it or have come to a different conclusion had the issue been presented to the court of review in the first instance. (*Schulenberg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356.) In a proceeding under the Probate Act, a court of review cannot undertake to assume the functions of the trial court and decide factual questions. The function of the reviewing court is limited to determining whether the judge in a probate matter was warranted in finding as he did. *In re Estate of Jaeger* (1974), 16 Ill. App. 3d 872, 876.

■ Given the particular facts and circumstances of this case, we cannot say that the trial court's findings and conclusion were against the manifest weight of the evidence, for a contrary conclusion is not evident. We conclude there is sufficient evidence in this record to establish that decedent intended to abandon her Illinois domicile permanently and acquire a permanent domicile in Pennsylvania in support of the judgment of the trial court.

The following facts support the trial court's determination decedent was domiciled in Pennsylvania at the time of her death. When she left Illinois, Natalie took all her personal possessions with her to Pennsylvania except for jewelry and items she left in storage in Illinois. Also, she took her horse to Pennsylvania, an animal which the trial court determined was necessary to her profession and livelihood. In addition, she left her dog in Illinois and found a good home for it there. Apparently, she closed her bank accounts in Illinois and established new accounts in Delaware, near her new home in Pennsylvania; she also opened a safety deposit box in Delaware which contained her valuable papers. In an unmailed letter she penned the day before her death, Natalie wrote that she had "moved to Pennsylvania!" Evidence was also presented that Natalie intended to return to Illinois for visits. The trial court noted that the decedent "was somewhat transient and would move whenever her career dictated." The court felt that it had "to consider her last established place of residence as her permanent domicile." It appears the court decided that Natalie had changed the focus of her life in a permanent manner from Illinois to Pennsylvania in pursuit of her equestrian career. Although some evidence was presented that Natalie intended to stay in Pennsylvania for only one year and then planned to return to Illinois, the trial court may have given that evidence less weight in light of the other testimony that the decedent intended to return to Illinois for visits and had "moved to Pennsylvania!"

Petitioner also argues that because the trial court's memorandum opinion and subsequent judgment order did not expressly address the question of Dr. Elson's burden of proof to establish that his deceased daughter changed her domicile from Illinois to Pennsylvania, the court below did not apply the presumption in favor of Natalie's continued residence in Illinois and failed to require Dr. Elson to prove that she intended to abandon her Illinois residence permanently and establish Pennsylvania as her new, permanent residence.

■ It is well settled that on appeal all reasonable presumptions are in favor of the action of the trial court and that the burden is on the appellant to show affirmatively the errors assigned on review.

(*Cogdill v. Durham* (1976), 43 Ill. App. 3d 940, 942; *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 251.) The party who prosecutes an appeal bears the burden of overcoming the presumption that the trial court's judgment is correct. (*Thanopoulos v. Pickens* (1980), 87 Ill. App. 3d 906, 909.) The reviewing court will not presume that error occurred below (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 241), and a court of review will not assume that the trial court misunderstood the applicable law. *Wabash Life Insurance Co. v. Cadillac Associates, Inc.* (1966), 72 Ill. App. 2d 413, 416.

In the case at bar there is no affirmative evidence in the record that the trial court either misunderstood or failed to apply the correct law regarding Dr. Elson's burden of proof. Petitioner argued in the trial court that Dr. Elson had the burden to show that Natalie had changed her domicile from Illinois to Pennsylvania and it is clear that the court was apprised of the burden-of-proof issue and heard the arguments of the petitioner's attorney relative to that question. We may not speculate the trial court failed to consider and apply the burden of proof in this case. See *Thanopoulos v. Pickens* (1980), 87 Ill. App. 3d 906, 909.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

REINHARD and VAN DEUSEN, JJ., concur.