2026 IL App (3d) 250091

Opinion filed January 30, 2026

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* ESTATE OF DAYVON BENNETT, Deceased, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| (Hometown National Bank and Natasha Chambers, as Coadministrators, | ) ) ) | |
| Petitioners-Appellees, | ) ) | Appeal No. 3-25-0091 Circuit No. 21-P-279 |
| v. | ) ) | |
| Lasheena Weekly, as Independent Administrator of the Estate of Carlton Weekly; Davon Brinson, Individually; and Cashae Williams, Individually, | ) ) ) ) ) ) | The Honorable David Garcia, Judge, presiding. |
| Respondents-Appellants). | ) | |

JUSTICE ANDERSON delivered the judgment of the court, with opinion.
Presiding Justice Hettel and Justice Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1     This case involves a battle between the estates of two rappers. Carlton Weekly was gunned down in Chicago in August 2020. Dayvon Bennett was a rival drill rapper[1] and was killed in Atlanta in November 2020.

¶ 2     In March 2021, a probate case was opened in Will County circuit court relating to Dayvon's estate (Bennett Estate). In October 2024, Lasheena Weekly (as administrator for Carlton's estate (Weekly Estate)) and two others filed a lawsuit in Cook County circuit court against various defendants, including the Bennett Estate, relating to Carlton's death. The Bennett Estate administrators filed a "Notice of Disallowance of Claims" in the Will County probate case, arguing that claims against the Bennett Estate were barred under section 18-12(b) of the Probate Act of 1975 (Act) (755 ILCS 5/18-12(b) (West 2024)).

¶ 3     In February 2025, the Will County probate judge entered an order granting the Bennett Estate's motion for disallowance of claims on grounds of timeliness. We hit pause, rewind, and reverse.

                                    I. BACKGROUND

¶ 5     This story is as tangled as a mixtape stuck in a boombox. The following facts are taken from the Will County probate case or are otherwise undisputed.

¶ 6     On August 4, 2020, Carlton (also known as FBG Duck) was standing outside the Dolce & Gabbana store in Chicago's Gold Coast neighborhood when he was shot multiple times. He died intestate, and his mother, Lasheena, became administrator of the Weekly Estate. Two of Carlton's companions, Davon Brinson and Cashae Williams, were also shot and seriously injured in the attack.

---

[1]Drill rap has been described as "very popular music that celebrates the gang lifestyle" (*People v. McNabb*, 2022 IL App (4th) 220070-U) and gang-oriented music about "retaliation" (*People v. Garrett*, 2024 IL App (1st) 221224-U).

¶ 7       On November 6, 2020, Dayvon (also known as King Von) was shot and killed in Atlanta, Georgia. He also died intestate, and in March 2021, his mother, Natasha Chambers (also known as Natasha Bennett), filed a petition for letters of administration in Will County case No. 21-P-279. In her petition, she identified Dayvon's address as 1978 Edgeview Drive in New Lenox, Illinois. She was appointed administrator of the Bennett Estate, and eventually Hometown National Bank was appointed coadministrator. On April 8, 2021, Natasha (as administrator for the Bennett Estate) formed an entity called Forever and a Day LLC as a holding company for the estate's intellectual property and royalty assets.

¶ 8       In September 2021, federal prosecutors in the Northern District of Illinois charged Charles Liggins, Kenneth Roberson, Tacarlos Offerd, Christopher Thomas, and Marcus Smart with various crimes in connection with Carlton's death, including murder. See *United States v. Liggins*, No. 1:21-CR-618 (N.D. Ill. Sept. 30, 2021) (indictment). Trial occurred from October 2023 to January 2024, and all defendants were convicted.

¶ 9       During the federal trial, evidence surfaced suggesting that Dayvon had offered a number of gang members a $100,000 bounty on Carlton's life. It appears this information was not publicly available until the federal trial.

¶ 10       On October 9, 2024, the Weekly Estate[2] filed the Cook County lawsuit, asserting 92 counts against the Bennett Estate, the LLC, and others for Dayvon's role in orchestrating the August 2020 shooting as part of a murder-for-hire conspiracy, among other things. See Weekly v. Only the Family Entertainment, Inc., No. 24-L-11220 (Cir. Ct. Cook County). That case remains pending

---

[2]For ease, we reference Lasheena Weekly (as administrator), Davon Brinson, and Cashae Williams collectively as the Weekly Estate. We recognize their identities and legal interests are ultimately distinct, but they are similarly situated for our purposes today.

in the Cook County circuit court and is not directly before us, and we take no position on the merits of that case.

¶ 11    In November 2024, the Bennett Estate issued a "Notice of Disallowance of Claims" under section 18-12(b) of the Act (755 ILCS 5/18-12(b) (West 2024)). The notice included a memorandum in which the Bennett Estate argued that the Weekly Estate's claims were time-barred under section 18-12(a)(3) of the Act (*id.* § 18-12(a)(3)). The Bennett Estate noted that the published claim notice identified a deadline of December 1, 2021, and included language stating: "any claim not filed on or before that date is barred." The Bennett Estate further asserted that the Weekly Estate did not file its claims in Cook County until October 9, 2024. Because the claims were filed nearly four years after Dayvon's death and nearly two years beyond the two-year bar set forth in section 18-12(b), the Bennett Estate contended the Weekly Estate's claims were untimely.

¶ 12    On January 2, 2025, the Weekly Estate appeared in the Will County probate case and filed a response to the Bennett Estate's notice of disallowance of claims. The Weekly Estate argued that the Will County probate court lacked jurisdiction over the Bennett Estate because Dayvon was not a Will County resident but, rather, was a resident of Fulton County, Georgia, at the time of his death. The Weekly Estate argued that jurisdiction is proper only if Dayvon was domiciled in Illinois, owned real estate in the county, or held the greater part of his personal property there. The Weekly Estate further contended that Natasha Chambers had provided false information regarding Dayvon's residence. Further, the Weekly Estate submitted court records showing Dayvon had two pending felony cases in Fulton County at the time of his death. The Georgia litigation included an initial court order that permitted his release, conditioned on house arrest at 1917 Brantley Walk Lane in Atlanta; that order was later modified to merely restrict Dayvon from leaving Georgia.

4

¶ 13     The Weekly Estate also asserted that the bulk of Dayvon's personal estate was located in Fulton County at the time of his death. The March 2021 petition for letters of administration that Natasha signed reported Dayvon owned no Illinois real estate and only $4,000 in Illinois personal property. Dayvon's death certificate listed his residence as Georgia based on information provided by Natasha.

¶ 14     The Weekly Estate further argued that the probate court lacked jurisdiction to disallow tort-based claims such as wrongful death and personal injury because they are contingent and not absolute at the time of death and have not been fully adjudicated. Finally, the Weekly Estate contended they were never served with notice of the probate proceedings as required under section 18-3 (*id*. § 18-3) and could not have received proper notice, as the proceeding was filed in a county and state where Dayvon did not reside.

¶ 15     The Bennett Estate, in its reply, countered that Dayvon was born, raised, and maintained his permanent residence at his mother Natasha's address in New Lenox until his death in November 2020. The Bennett Estate further contended that Dayvon was registered to vote in Illinois, held Illinois-issued identification, and banked and received medical care in Illinois and that his family resided there. Based on these proffered facts, the Bennett Estate asserted that the Will County probate court properly exercised jurisdiction.

¶ 16     In February 2025, the Weekly Estate filed a motion asking the trial court to take judicial notice of Dayvon's interview on the DJ Smallz Eyes Podcast, in which he stated that he had left Illinois and relocated to Atlanta, Georgia, for life and career reasons. The Weekly Estate also moved to strike the affidavits executed by Natasha Chambers and Jameson Francois in support of the Bennett Estate's claim that Dayvon resided in Illinois.

¶ 17 On February 10, 2025, the Will County probate judge conducted a hearing on the Bennett Estate's motion to disallow claims under section 18-12 of the Act. The court heard oral argument on the disallowance motion but did not conduct an evidentiary hearing. At the conclusion of the hearing, the probate judge granted the Bennett Estate's motion on the basis that the Weekly Estate's claims were time-barred by statute. The court also ruled that the Weekly Estate's motion regarding the podcast interview and the motion to strike were untimely and refused to consider them. The court entered a final order disposing of the claims as barred under section 18-12(b) of the Act (*id*. § 18-12(b)). This appeal followed.

¶ 18 Meanwhile, an estate case was opened in Fulton County, Georgia (*In re* Estate of Bennett, No. PC-2025-547 (Prob. Ct. Fulton County, Ga.), and several documents were filed in that case, including a guardian *ad litem*'s answer to the petition for letters of administration, acceptance and acknowledgement of service of the guardian *at litem*, and an April 22, 2025 order appointing an administrator. The Weekly Estate filed a motion asking us to take judicial notice of the Fulton County lawsuit and the foregoing documents, and we grant that motion.

¶ 19                                          II. ANALYSIS

¶ 20 The Weekly Estate argues, among other things, that (A) the probate court lacked jurisdiction because Dayvon is a Georgia resident and the probate court ought to have conducted an evidentiary hearing to make that determination, (B) section 18-12 of the Act should be equitably tolled, and (C) the probate court did not have jurisdiction to bar claims against the estate-owned LLC. The probate court did not conduct an evidentiary hearing or make factual findings based on anything outside the paper record on appeal. Accordingly, we review the probate court's orders *de novo*. *In re Estate of Zagaria*, 2013 IL App (1st) 122879, ¶ 26; *Keller v. Walker*, 319 Ill. App. 3d 67, 70 (2001).

6

¶ 21                          A. Illinois Probate Jurisdiction

¶ 22          In a probate case, as with any other case, if the court lacks jurisdiction over the parties, any judgment entered is void and may be attacked and vacated at any time, either directly or collaterally. See *In re Estate of Stanford*, 221 Ill. App. 3d 154, 162 (1991). Thus, if Illinois lacked jurisdiction, the Illinois probate court had no authority to administer the Bennett Estate. The Weekly Estate hopes to establish that Dayvon was domiciled in Atlanta, Georgia, not Illinois, and consequently, there can be no probate proceeding in Illinois and—by extension—the Act's claim-filing period (further discussed below) would not apply. We first examine the scope of Illinois's probate courts' personal jurisdiction in this case.

¶ 23          The Weekly Estate argues—at great length—that the probate court lacked jurisdiction pursuant to section 5-1 of the Act (755 ILCS 5/5-1 (West 2024)). Section 5-1 provides:

> "When the will of a testator is probated or when the estate of a decedent or missing person is administered in this State, the probate or the administration shall be in the court of the county determined as follows:
>
>> (a) In the county where he has a known place of residence;
>>
>> (b) If he has no known place of residence in this State, in the county in which the greater part of his real estate is located at the time of his death; or
>>
>> (c) If he has no known place of residence and no real estate in this State, in the county where the greater part of his personal estate is located at the time of his death." *Id.*

¶ 24          The problem with the Weekly Estate's argument is that section 5-1 is not a jurisdictional statute; rather, it is a venue statute. See *In re Estate of Willavize*, 21 Ill. 2d 40, 43 (1960)

7

(considering the predecessor statute to section 5-1); see also *In re Estate of Hardy*, 35 Ill. App. 3d 823, 826 (1976) ("the fact that venue was initially proper in another county does not render the Cook County judgments void"). The statute determines the appropriate county venue if Illinois has jurisdiction but assumes jurisdiction exists rather than setting the standards for establishing it.

¶ 25 We instead look to case law to determine the standards for establishing the jurisdiction of an Illinois probate court over a decedent's estate. Admittedly, those standards are similar to those stated in section 5-1. An Illinois probate court may exercise jurisdiction over the estate of a decedent either when the deceased was domiciled in Illinois or owned property in this State at the time of his or her death. *In re Estate of Elson*, 120 Ill. App. 3d 649, 654 (1983); *In re Estate of Jackson*, 48 Ill. App. 3d 1035, 1037 (1977).

¶ 26 We first consider Dayvon's property holdings. It appears undisputed that Dayvon owned no real estate in Illinois but owned at least *some* personal property that was in Illinois. Personal property alone may be the basis for jurisdiction. *In re Estate of Hansen*, 109 Ill. App. 2d 283, 293 (1969); *In re Estate of Neilson*, 320 Ill. App. 655, 659-60 (1943). In the March 2021 petition for letters of administration, Natasha indicated that Dayvon owned $4,000 in Illinois personal property; that does not appear to be in serious dispute. So, the probate court has, at a minimum, jurisdiction to handle *that* aspect of Dayvon's estate. Illinois has long recognized that even when an estate has been opened for a decedent domiciled in another state, an ancillary estate may be opened to deal with real or personal property located in Illinois. *Chicago Terminal R.R. Co. v. Winslow*, 216 Ill. 166, 172-73 (1905); *Wisemantle v. Hull Enterprises, Inc.*, 103 Ill. App. 3d 878, 881-82 (1981).

¶ 27 Here, however, the most valuable asset is the rights to Dayvon's music. Generally, intangible assets are sited, taxed, and come under the probate jurisdiction of the state of the

8

decedent's domicile. *In re Estate of Swanson*, 124 Ill. App. 3d 276, 280 (1984) (intangible personal property interest in Illinois land trust sited and taxed in Florida domicile of decedent); *In re Estate of McCalmont*, 16 Ill. App. 2d 246, 254 (1958) (Illinois estate responsible for intangible property even though Ohio estate also open); *People v. Forman*, 322 Ill. 223, 230-31 (1926) (intangible property note held in Iowa still sited in Illinois as domicile of decedent). Thus, domicile determination is unavoidable.

¶ 28        In probate, "residence" and "domicile" are treated synonymously. *Elson*, 120 Ill. App. 3d at 653-54. In order "to establish a new domicile a person must physically go to a new home and live there with the intention of making it his permanent home." *Keck v. Keck*, 56 Ill. 2d 508, 514 (1974). A person can have only one domicile, and once a domicile is established, it continues until a new one is actually acquired. *Elson*, 120 Ill. App. 3d at 654; *McCalmont*, 16 Ill. App. 2d at 255. Proving a decedent's domicile therefore requires proof of the intent of a deceased person to establish a permanent home, making it primarily an issue of fact, although a difficult one to prove. *Elson*, 120 Ill. App. 3d at 654; *McCalmont*, 16 Ill. App. 2d at 255; *Jackson*, 48 Ill. App. 3d at 1038. The burden of proof rests with the party attempting to establish a change in domicile, and the determination is made based on a preponderance of the evidence. *Elson*, 120 Ill. App. 3d at 654-55. Because the proof of intent to establish domicile may rest on very slight differences in circumstances, resolving the question of domicile depends upon the facts and circumstances of each particular case. *Fry v. Fry*, 332 Ill. App. 484, 492 (1947); *Elson*, 120 Ill. App. 3d at 654-55. These difficult intent proofs mandate development through an evidentiary hearing and cannot be determined as a matter of law without the presentation and close review of evidence. *Fry*, 332 Ill. App. at 492; *Elson*, 120 Ill. App. 3d at 654-55.

¶ 29    In this case, we cannot apply the domicile test due to a factual dispute. The Bennett Estate contends that Dayvon resided in Illinois. He grew up in Illinois, had an Illinois-issued identification card, and was registered to vote in Illinois. His family was in Illinois, and he received medical care there. Further, his mother signed a sworn statement reflecting that he was an Illinois resident. But the Weekly Estate submitted court records showing that Dayvon had two pending felony cases in Fulton County and that he was placed on house arrest in Georgia. Dayvon was the sole manager of Get Back Gang Ent, LLC, which was incorporated in Florida, but the incorporation papers identified Dayvon as residing in Georgia. He also died in Georgia. That is to say nothing of the supplemental evidence the Weekly Estate sought to introduce that could have further supported its contention.

¶ 30    When a trial judge is faced with contested facts and conflicting evidence on an issue that is central to a case, an evidentiary hearing is typically required. See *Fry*, 332 Ill. App. at 492; *Elson*, 120 Ill. App. 3d at 654-55. Here, the probate court found that the claims were time-barred without considering any of the proffered evidence relating to Dayvon's domicile and without resolving the dispute with an evidentiary hearing. This was error because, if Dayvon were a Georgia resident, the vast majority of his estate would be settled in Georgia, and the Illinois time-bar statute would not apply to those assets.

¶ 31    Given that an evidentiary hearing is necessary to resolve the conflicting evidence regarding Dayvon's domicile, the probate judge erred in striking as untimely the Weekly Estate's motions (1) asking the probate court to take judicial notice of Dayvon's interview on the DJ Smallz Eyes Podcast and (2) attacking affidavits executed by Natasha Chambers and Jameson Francois in support of the Bennett Estate's claim that Dayvon resided in Illinois. On remand, the probate judge should reach the merits of these motions.

¶ 32                              B. The Probate Act Claims Bar

¶ 33        Because the Illinois probate court appears to have jurisdiction to administer the Bennett

Estate at least as to the $4,000 in personal property, we must next consider whether the Weekly

Estate's claims are time-barred. Section 18-12 of the Act (755 ILCS 5/18-12(a)(3), (b) (West

2024)) provides a limited window in which to bring a claim against an estate. See *In re Estate of*

*King*, 91 Ill. App. 2d 342, 349 (1968), *aff'd*, 41 Ill. 2d 412 (1968). Compliance with the claim-

filing period is mandatory. *In re Estate of Hoheiser*, 97 Ill. App. 3d 1077, 1081 (1981).

Noncompliance results in a bar to recovery, even if the executor had personal knowledge of the

claim. *In re Marriage of Epsteen*, 339 Ill. App. 3d 586, 597 (2003).

¶ 34        The trial court rejected the Weekly Estate's claims because they were not filed within two

years, as required under section 18-12 of the Act, and refused to consider whether the time bar

could be tolled. 755 ILCS 5/18-12(a)(3), (b) (West 2024).

¶ 35        In pertinent part, section 18-12 provides:

          "(a) Every claim against the estate of a decedent, except expenses of

administration and surviving spouse's or child's award, is barred as to all of the

decedent's estate if:

                              * * *

              (3) The claimant or the claimant's address is not known to

          or reasonably ascertainable by the representative and the claimant

          does not file a claim with the representative or the court on or before

          the date stated in the published notice as provided in Section 18-3.

          (b) Unless sooner barred under subsection (a) of this Section, all claims

which could have been barred under this Section are, in any event, barred 2 years

                              11

after decedent's death, whether or not letters of office are issued upon the estate of the decedent." *Id*. § 18-12(a)(3), (b).

We agree with the probate court's finding that the Weekly Estate asserted its claims well beyond section 18-12's time bar—at least as far as the $4000 in personal property is concerned.

¶ 36    Nonetheless, the Weekly Estate argues the time bar should be tolled. The Weekly Estate presented a number of bases in support of its equitable tolling argument, including fraud, minority, and inability to identify proper defendants. Other courts have repeatedly rejected efforts to toll the two-year period in a variety of contexts. See, *e.g.*, *Smith v. Connor*, 2025 IL App (2d) 240536, ¶ 28 (barred claims include tort and contract); *In re Estate of Topal*, 2022 IL App (4th) 210613, ¶¶ 18, 19 (no exception for claim that could not be known within statutory period); *In re Estate of Parker*, 2011 IL App (1st) 102871, ¶¶ 57, 58 (counterclaim barred); *Pratt v. Baker*, 48 Ill. App. 2d 442, 444-45 (1964) (no exception or tolling for persons with disabilities). Courts have even rejected tolling arguments that were based on fraud allegations. *Messenger v. Rutherford*, 80 Ill. App. 2d 25, 30-31 (1967). One reason underlying those holdings is the statute's purpose to facilitate early and final settlement of estates; reading exceptions into the statute would prolong the administration of estates indefinitely. See *Pratt*, 48 Ill. App. 2d at 444. Consequently, "where a legal claim should have been, but was not, filed against an estate within the statutory period, relief will not be accorded by the application of equitable principles." *In re Estate of Ito*, 50 Ill. App. 3d 817, 820 (1977). In short, no exception to the filing period "may be engrafted upon it by judicial decision." *Id.*; *Hoheiser*, 97 Ill. App. 3d at 1081. As stated in *King*, 91 Ill. App. 2d at 349, the probate court has "no jurisdiction or power to entertain such a proceeding after the statutory period has passed." For those reasons, the Act does not allow tolling of the section 18-12 time period. But we reiterate that the section 18-12 time bar limits claims only in estates over which

12

Illinois courts have jurisdiction and due process concerns are not present. See *In re Estate of Oliver*, 50 Ill. App. 3d 1, 3 (1977) (refusing to apply the time bar where the statutory publication requirement was not followed).

¶ 37                    C. Probate Jurisdiction Over Forever and a Day LLC

¶ 38        The Weekly Estate also seems to assert claims against the LLC, but the basis for that is unclear in the record. The LLC was formed after the opening of the Bennett Estate, and its operating agreement named as its only member "Natasha Chambers, not individually but as independent administrator of the Estate of Dayvon Bennett, deceased." The agreement names Natasha Chambers as the LLC manager and restricts her from altering her membership without approval of the probate court. The Bennett Estate argues that the LLC is an estate asset and was formed to hold Dayvon's intellectual property and to receive his royalties and that, as an estate asset, the Act's bar on claims against the Bennett Estate also bars claims against its assets.

¶ 39        The probate court heard no evidence on any issue related to its jurisdiction over the LLC nor on the jurisdictional basis to bar the Weekly Estate's claims against it. The court, nonetheless, entered an order granting the Bennett Estate's motion to disallow claims, finding the Weekly Estate's claims against the Bennett Estate and the LLC were both barred as untimely claims against the Bennett Estate. The specific basis relied on by the probate court remains unclear.

¶ 40        We note that a limited liability company is a legal entity that is generally distinct from its members and has its own legal rights and obligations. *Flores v. Westmont Engineering Co.*, 2021 IL App (1st) 190379, ¶ 29. The LLC is not even a party to this case.

¶ 41        The record here suggests that the LLC was created to be an entity separate from the Bennett Estate. It apparently had its own bank account and tax identity, and it entered into contracts separately from the Estate. Indeed, transactions appear in the Bennett Estate accounts that show

13

the transfer of property and money between the LLC and the Bennett Estate as different entities. Due to the nonexistent factual development on this issue, however, we do not express any opinion on the relationship between the Bennett Estate and the LLC but, instead, remand the question to the probate court for development of the factual record needed to determine whether the section 18-12 time bar also applies to claims against the LLC.

¶ 42                                   III. CONCLUSION

¶ 43        The probate court's order granting the Bennett Estate's motion to disallow claims and rejecting the Weekly Estate's claims as untimely is reversed. We remand to the probate court for an evidentiary hearing to determine Dayvon's place of domicile.

¶ 44        We agree with the probate court that the Weekly Estate's claims against Dayvon's $4,000 in personal property sited in Illinois are time-barred. Regarding the rest of Dayvon's estate, if he is determined to have been an Illinois resident at the time of his death, then the probate court may then determine whether the Weekly Estate's claims against intellectual property are time-barred under section 18-12 of the Act. If, however, the probate court determines Dayvon was a Georgia resident, then the Illinois court may only exercise jurisdiction—and enforce section 18-12's time bar—over those items of personal property that were located in Illinois at the time of his death.

¶ 45        Given that we are effectively hitting the replay button on the domicile issue, we see no timeliness or surprise-based reason why the Weekly Estate should be foreclosed from submitting supplemental evidence on that issue. The probate court is directed to rule on the substance of those motions, and we offer no opinion as to their merits. We further hold that the probate court's bar on the claims asserted against the LLC was, at a minimum, premature.

¶ 46        Reversed and remanded.

14

| | |
|---|---|
| ***In re Estate of Bennett**, 2026 IL App (3d) 250091* | |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 21-P-279; the Hon. David Garcia, Judge, presiding. |
| **Attorneys for Appellant:** | Roosevelt Allen, Rowland Edwards, and Yao O. Dinizulu, of Dinizulu Law Group, Ltd., of Chicago, for appellants. |
| **Attorneys for Appellee:** | Jennifer L. Friedland, of Momkus LLP, of Lisle, for appellees. |